Thomas R. PARNELL et al., Plaintiffs-Appellants-Cross Appellees,

v.

RAPIDES PARISH SCHOOL BOARD et al., Defendants-Appellees-Cross Appellants,

v.

Terry L. FARRAR et al., Intervenors.

No. 76–4176.

United States Court of Appeals, Fifth Circuit.

Nov. 17, 1977.

Rehearing and Rehearing En Banc Denied Feb. 3, 1978.

Stanley A. Halpin, Jr., New Orleans, La., for plaintiffs-appellants-cross appellees.

John C. Hoyle, Atty., Civil Rights Div., Dept. of Justice, Washington, D. C., amicus for U. S. A.

James J. Brady, Alexandria, La., for Henry, Lindsay, Matthews & Hathorn.

Richard B. Crowell, Alexandria, La., for other interested parties.

Before WISDOM, GEWIN and AINSWORTH, Circuit Judges.

WISDOM, Circuit Judge:

This is another chapter in the extended story of reapportionment in Rapides Parish, Louisiana. In this class action brought under 42 U.S.C. § 1983, the district court found that the apportionment scheme used to select parish school board and police jury members, instituted by a federal court in 1971 in response to an earlier suit, could not legally be maintained. The trial judge ordered that both bodies be elected from nine single-member districts. The existing boards were to remain in office until the next scheduled elections. For the school

board, those elections, delayed pending the resolution of the suit, will occur next summer. The police jury election is not scheduled until 1980. The plaintiffs and the police jury appealed; the school board did not. We affirm the district court's holding but modify the remedy ordered.

## I.

Rapides Parish, located in central Louisiana, had a population of 118,000 in 1970. Approximately 28 percent of that population were black; 72 percent were white. Alexandria, the parish seat, is the only large town in the parish. Most of the black population is concentrated in or around Alexandria.

Rapides Parish is governed by a police jury, a Louisiana local governing body similar to a county commission. This body acts as the parish legislature, but also historically has exercised various administrative functions such as the maintenance and construction of roads, bridges, and public buildings. See La.Const. Art. 14, Sec. 3; La.Rev. Stat.Ann. § 33:1221, et seq. (West Supp. 1977). The parish is divided into 11 wards. Until 1968 one police juror was elected from each ward. The wards varied tremendously in population. Thus, in 1970, Wards One and Eight had a combined population of 64,659, while Wards Two, Three, Four, and Six had a combined population of only 14,-073.

In 1968 suit was filed against the police jury, charging that the apportionment violated the one-man one-vote doctrine. After extensive litigation the district court approved a plan submitted by the local authorities. LeBlanc v. Rapides Parish Police Jury, July 26, 1971, W.D.La., No. 13,715. The parish was divided into four districts, each composed of a combination of wards. District A, composed of Wards One and Eight, elected ten members of the police jury and of the school board. Ward One consisted of Alexandria, Ward Eight of an area near Alexandria. District A was 37 percent black by population. It contained

72 percent of the black population of the entire parish. District B elected five members, District C two members, and District D one member. Those three districts were predominantly white.

In 1973 the United States sued to set aside the LeBlanc plan. The government contended that it was invalid because it lacked the approval of the Attorney General, as required by Section 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973c (1970). The district court held that Section 5 of the Act did not apply to plans submitted in response to court orders. United States v. Rapides Parish School Board, Oct. 25, 1973, W.D.La., No. 19,209.

Also in 1973 a group of residents filed a class action, seeking a change in the LeBlanc plan. The plaintiffs charged that the LeBlanc plan diluted black voting strength in violation of the Fourteenth and Fifteenth Amendments, and also violated the one-man one-vote rule. In May 1974 the district court struck down the LeBlanc plan. Bradas v. Rapides Parish Police Jury, 1974, W.D.La., 376 F.Supp. 690. The trial judge found that District A concentrated black strength in a multi-member district, making it difficult, if not impossible, for that strength to elect any officials. The judge ordered that single-member districts be substituted. All four plans submitted by the parties were "either incomplete and unsupported, or were constitutionally unacceptable". 376 F.Supp. at 694. The trial judge then drafted his own plan for nine single-member districts. Elections under that plan were held for both bodies in late 1974. Two blacks were elected to the school board, and two to the police jury.

The defendants appealed. In February 1975 this Court reversed the trial court's decision. Bradas v. Rapides Parish Police Jury, 5 Cir. 1975, 508 F.2d 1109. The Court concluded that the plaintiffs had failed to carry their burden of proof under the standards governing dilution of minority voting strength.[1] The district court's order was

---

1. In Bradas the appellants also raised the questions of res judicata and the size of the police

jury that are raised here. Because the Court found that the plaintiffs had not carried their

vacated, and that court was required to reinstitute the *LeBlanc* plan in time for the next election. The Court, however, declined to disturb the tenure of the recently-elected school board and police jury of nine members each.

On remand the district court approved a settlement entered into by the sitting nine member bodies, under which they would continue as nine member groups indefinitely. The Court of Appeals granted a writ of mandamus and ordered the judge to withdraw his approval of this settlement. The *LeBlanc* plan was reinstituted in September 1975. In December elections for the 18 member police jury were held. The two black incumbents from the nine member jury lost, and no other black candidates won.

On April 2, 1976, the present suit was filed.[2] Three black residents of the parish filed it as a class action on behalf of all the black residents. They sued the police jury, the school board, and all the individual members of each. They charged that the *LeBlanc* plan violated the Fourteenth and Fifteenth Amendments by impermissibly diluting their voting strength, and by deviating from the one-man one-vote principle. Elections to replace the sitting nine member school board with the *LeBlanc* eighteen member school board were scheduled for August 14. The plaintiffs and the school board sought a preliminary injunction. The district judge stated that, in light of *East Carroll Parish School Board v. Marshall,* 1976, 424 U.S. 636, 96 S.Ct. 1083, 47 L.Ed.2d 296 *aff'g on other grounds, Zimmer v. McKeithen,* 5 Cir. 1973 (en banc), 485 F.2d 1297, the plaintiffs would probably succeed on the merits. Nevertheless, he felt bound by the writ of mandamus from this Court and would not grant the requested injunction. An appeal followed, and the district judge was freed from the effects of the writ of mandamus. The judge then enjoined the election.

The district court issued its opinion on September 30, 1976. *Parnell v. Rapides Parish School Board,* 1976, W.D.La., 425 F.Supp. 399. The court held that the *LeBlanc* plan was invalid on two independent grounds. First, it violated the limits of judicial discretion in formulating reapportionment plans by permitting multi-member districts. Second, the plan had the effect of diluting black voting strength. The judge ordered that the nine member plan, developed by Judge Scott in the *Bradas* case, be implemented. The school board elections, enjoined by the court since July 1976, were to be conducted under that plan. The police jury was also to be elected under that plan, but not until the next regularly scheduled election in 1980.

The plaintiffs appealed, asserting that the judge erred by not ordering an immediate police jury election. The police jury, and seventeen of its eighteen members, cross-appealed, asserting that the *LeBlanc* plan was valid, that this suit was barred by res judicata, and that the district court abused its discretion in reducing the size of the police jury. The school board did not appeal.

## II.

■ The district court's first ground for its decision was that intervening decisions have revealed the *LeBlanc* plan to be an inappropriate judicial remedy. The district judge relied upon the Supreme Court's decision in *East Carroll Parish School Board v. Marshall,* 1976, 424 U.S. 636, 96 S.Ct. 1083, 47 L.Ed.2d 296. The Court's per curiam opinion stated:

> [W]hen the United States district courts are put to the task of fashioning reapportionment plans to supplant concededly invalid state legislation, single-member districts are to be preferred absent unusual circumstances. [citations omitted]. As the en banc opinion of the Court of Appeals amply demonstrates, no special cir-

---

burden of proof below, these questions were never reached. 508 F.2d 1111–12.

**2.** The instant case was tried by Senior District Judge Hunter. Both the previous cases, *LeBlanc* and *Bradas,* were tried by Judge, now Chief Judge, Scott.

cumstances here dictate the use of multi-member districts. Thus, we hold that in shaping remedial relief the District Court abused its discretion in not initially ordering a single-member reapportionment plan.

424 U.S. at 639–40, 96 S.Ct. at 1085. The Court recently reiterated this position in *Connor v. Finch,* 1977, 431 U.S. 407, 415, 97 S.Ct. 1828, 1834, 52 L.Ed.2d 465, 474, holding that a multi-member plan should be ordered by a court only where it "articulates . . . 'a singular combination of unique factors' that justifies a difference". This Court has recognized the effect of *East Carroll Parish* on the limits of district court power. In *Wallace v. House,* 5 Cir. 1976, 538 F.2d 1138, 1140–41, *on remand from,* 1976, 425 U.S. 947, 96 S.Ct. 1721, 48 L.Ed.2d 191 *vacating,* 5 Cir. 1975, 515 F.2d 619, we voided a district court plan which provided at-large councilmanic elections.

The defendants did not argue to the district court that unique factors existed in Rapides Parish to justify a multi-member district. Nor did they so argue here. The clear directive of the Supreme Court must be followed, and the district court's holding must be affirmed.

■ We also affirm as to the trial court's second ground, that the *LeBlanc* plan impermissibly diluted the votes of the black residents of the parish. In dealing with charges of vote dilution, our starting point must be this Court's definitive opinion in *Zimmer v. McKeithen,* 5 Cir. 1973, 485 F.2d 1297, *aff'd on other grounds sub nom. East Carroll Parish School Board v. Marshall,* 1976, 424 U.S. 636, 96 S.Ct. 1083, 47 L.Ed.2d 296. *Zimmer* pointed out that statistics alone could not prove impermissible dilution of minority voting power. Instead,

"where the petitioner can demonstrate that 'its members had less opportunity than did other residents in the district to participate in the political processes and to elect legislators of their choice' . . . such districting schemes are constitutionally infirm." [citations omitted]

485 F.2d at 1304–05. The Court listed a number of factors which were to be considered. Among them were the motivation for the districting scheme, lack of minority group access to the process of slating candidates, unresponsiveness of legislators to minority interests, and the strength of the state interests served by multi-member districts. Other factors were the existence of past discrimination with continuing effects on political participation, the size of the districts, majority vote requirements, anti-single shot voting provisions, and the existence of a requirement that candidates run from particular geographic subdivisions. 485 F.2d at 1305.

Judge Hunter, the trial judge, took extensive evidence on the impact of the multi-member districts on black participation in Rapides Parish politics. He considered the population distribution in the parish, the legacy of discrimination, the probability of racial bloc voting, the structure of the electoral process, and the outcome of past elections. The judge concluded:

"The ultimate question is, of course, how these formal structures (multi-member districts, majority run-off), informal structures (such as the one-party system), and political context (history of racial discrimination, etc.) operate in combination . . . The experiences of blacks running in the multi-member districts under the *LeBlanc* Plan show that these factors, particularly in combination with racial bloc voting, effectively deny blacks access to the political process. The predictable outcome is that blacks are consistently defeated in the multi-member districts. This is no accident, nor is [it] the mere function of losing fair elections. Rather, given the totality of circumstances of the political context which includes bloc voting, a one-party system, and the vestiges of a long history of racial discrimination, the *LeBlanc* plan clearly stacks the decks against blacks by the use of multi-member districts with a majority run-off requirement."

425 F.Supp. 399, 406. The case presented here is much stronger than that rejected in *Bradas.* Under the *Zimmer* standard these facts constituted a compelling case. We

cannot say that the finding was clearly erroneous.

On appeal the defendants did not mount a strong attack on the merits of the lower court's findings. Instead, they concentrated on their position that the suit was barred by res judicata. Although we are aware of the importance of res judicata in preventing relitigation of controversies, we hold that this cause was not barred.

■ The district court's first ground cannot be barred by a claim of res judicata. The law had changed significantly between the Court of Appeals decision in *Bradas* in February 1975 and the filing of this suit. The *East Carroll Parish* decision changed the relevant law. Had this Circuit considered judicially ordered multi-member districts impermissible in all but extraordinary situations, the *Zimmer* decision would not have reached the constitutional issue.[3] Faced with changing law, courts hearing questions of constitutional right cannot be limited by res judicata. If they were, the Constitution would be applied differently in different locations. But "[t]he Constitution is not geared to patchwork geography. It tolerates no independent enclaves." *Christian v. Jemison,* 5 Cir. 1962, 303 F.2d 52, 55, *cert. denied,* 1962, 371 U.S. 920, 83 S.Ct. 287, 9 L.Ed.2d 229. For this reason contentions that new reapportionment suits were barred have been rejected. *See Whitcomb v. Chavis,* 1971, 403 U.S. 124, 162–63, 91 S.Ct. 1858, 29 L.Ed.2d 363; *Moch v. East Baton Rouge School District,* 5 Cir. 1977, 548 F.2d 594, *cert. denied,* 1977, U.S., 46 U.S.L.W. 3218.

Res judicata does not bar the plaintiffs' assertion of dilution of their voting strength. Although the same claim, made by a similar class, was rejected by this Court for insufficient proof in *Bradas v. Rapides Parish Police Jury,* 5 Cir. 1975, 508 F.2d 1109, "it should be remembered that res judicata is a principle of public policy and should be applied so as to give rather than deny justice", *Dore v. Kleppe,* 5 Cir. 1975, 522 F.2d 1369, 1374. To bind forever class members to a deprivation of their constitutional rights because some class members failed to enter enough evidence to meet their burden of proof is unjust. That is particularly true in this case. The district judge, who had ordered the *LeBlanc* plan originally, was convinced by the *Bradas* plaintiffs; their only error was in not foreseeing that the reviewing court would be more skeptical. Res judicata cannot be allowed to yield such an unfair outcome.[4] Therefore, neither of the district court's holdings were barred, and both are affirmed.

### III.

■ The district court ordered that elections be held under the nine single-member district plan from *Bradas.* The school board election, delayed by the trial judge's preliminary injunction, is to be held next summer. The next scheduled police jury election is in 1980. We affirm as to the district court's apportionment plan, but must modify the timing of the new elections.

The plaintiff class in this case has waited long enough for fair admission to the political process. Before the Civil War blacks had no political rights. After the Civil War what rights they acquired were stripped away by several state-ordered ploys. *See United States v. Louisiana,* 1963, E.D.La. (three judge court), 225 F.Supp. 353, *aff'd,* 380 U.S. 145, 85 S.Ct. 817, 13 L.Ed.2d 709.

---

**3.** A further distinction between the law before and after *East Carroll Parish* was pressed by the United States as amicus curiae below. *East Carroll Parish* involved a plan developed by the defendants and merely approved by the court. The previous cases in which the Supreme Court had stressed the importance of single-member districts in granting equitable relief had involved court-developed plans. In this case the *LeBlanc* plan was authored by the parties.

**4.** The problems of res judicata in "public law" actions have provoked some comment. *See* Note, Developments in the Law: Class Actions, 89 Harv.L.Rev. 1321, 1396–98 (1976); Note, Class Action Judgments and Mutuality of Estoppel, 43 Geo.Wash.L.Rev. 814, 818–20 (1975). *See generally* 1B Moore's Federal Practice, § 0.405[11].

When the federal government, through judicial enforcement of the Constitution and executive enforcement of the Voting Rights Act of 1965, forced the admission of black men and women to politics, they still faced obstacles. In Rapides Parish, as in many parishes and counties, they had to contend with multi-member districts and an apportionment which denied them effective access to political representation. Only in the interim between the district court decision in *Bradas* and this Court's reversal of that decision have blacks been represented on the police jury.

It is unfortunate that the incumbent members of the police jury, elected after an order by this Court, must have their terms cut short; and that the voters of Rapides Parish must face another election. But it would be more unfortunate for the exclusion of black Americans from fair participation in Rapides Parish politics to continue any longer than necessary. The district judge should order police jury elections under a legal apportionment plan as soon as reasonably practicable. At oral argument we were informed that the school board elections are scheduled for next summer. The extra expense to the parish of a police jury election at that time would not be great. If the district court considers it practicable, it would seem reasonable to hold the police jury election at the same time as the school board election.

■ We affirm the apportionment plan ordered by the district court. The *LeBlanc* plan provided for a police jury of eighteen members, the number previously elected in Rapides Parish. The district court adopted the nine member plan formulated by Judge Scott in *Bradas*. Judge Hunter found that the *Bradas* plan met one-man one-vote requirements, gave minority groups a fair opportunity to participate, and was favored by the parties. 425 F.Supp. at 407. The *Bradas* plan achieved an average population deviation of 0.72 percent, and a maximum deviation of 2.2 percent. At the same time it preserved to a very substantial degree the traditional ward lines and geographical boundaries of the parish, thus promoting continuity and an ease in the transition from the old plan to the new. Judge Scott

found that an eighteen member plan could not provide these benefits.

Having experienced the difficulty, indeed the impossibility, of drafting a plan providing for eighteen single-member districts, and after considering numerous alternatives, we determined that the nine single-member district plan was the plan most consistent with the Fourteenth and Fifteenth Amendment principles. In reducing the membership of the School Board and the Police Jury, we are well aware of the holding of *Minnesota State Senate v. Beens* . . . ..

376 F.Supp. at 693.

As Judge Scott noted, *Sixty-Seventh Minnesota State Senate v. Beens,* 1972, 406 U.S. 187, 92 S.Ct. 1477, 32 L.Ed.2d 1, was not a barrier to his decision. In that case the district court had reduced the size of the Minnesota Senate from 67 members to 35. The size of the state senate was set by statute. It had consisted of 67 members since 1913, through two previous reapportionments. The Court held that district courts should "accommodate the relief ordered to the appropriate provisions of state statutes relating to the legislature's size insofar as is possible." 406 U.S. at 197, 92 S.Ct. at 1484. The Court recognized that minor changes in size were permissible, and that major changes might be necessary if "the number so prescribed [by the state] occasions significant and invalidating population deviations." 406 U.S. at 199, 92 S.Ct. at 1485.

Judge Scott properly distinguished this case from *Beens*. First, the state interest is not as great. In *Beens* the state had maintained the senate at the same size, by statute, for almost sixty years. In this case the state does not mandate the size of the police juries in its parishes. Instead, the relevant statute only requires that the police jury have between five and fifteen members, or any other number which was in effect before May 1974. La.Rev.Stat.Ann. § 33:1221 (West Supp.1977). The plan ordered by the district court fell well within the limits set by Louisiana's policy.

Second, the district judge in *Bradas* found that an adequate eighteen single-

member district plan was impossible. As the number of districts increases, the percentage deviation created by a discrepancy of any given number of voters also increases. The nine member plan adopted by both judges has a remarkably low deviation. Its superiority to the eighteen member plans discussed by Judge Scott is a further important difference between this case and *Beens. Beens* does not bar this relief.

### IV.

The road to a legal apportionment in Rapides Parish has been long and rocky. This decision should signal that the end is in sight. Police jury elections, under the nine member plan adopted by the district court, should be held as soon as reasonably practicable. Fair political participation for all the voters of Rapides Parish must be delayed no longer. The decision of the district court is affirmed in part, modified in part, and remanded for further proceedings not inconsistent with this opinion.

AFFIRMED IN PART, MODIFIED IN PART AND REMANDED.