Clinton JACKSON et al.,
Plaintiffs-Appellees,

v.

DeSOTO PARISH SCHOOL BOARD,
Defendant-Appellant.

No. 76–3257.

United States Court of Appeals,
Fifth Circuit.

Dec. 4, 1978.

**4.** 28 U.S.C.A. § 2281 et seq.

John F. Ward, Jr., Baton Rouge, La., for
Desoto Parish School Bd.

B. J. Woods, Shreveport, La., for plaintiffs-appellees.

Before COLEMAN, CLARK and RUBIN, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

This is a case of re-reapportionment; it raises the issue whether the trial court properly ordered a new apportionment of a public body that had been reapportioned five years earlier in accordance with its own prior order. Because the procedure followed was improper, we remand for a hearing and reconsideration.

Plaintiffs, a class composed of black citizens of DeSoto Parish, first challenged the constitutionality of the apportionment scheme for the election of both the DeSoto Parish Police Jury (the county governing body) and School Board in 1971. After a full hearing, the district court held in *Clark v. DeSoto Parish Police Jury,* an unreported opinion, that the common apportionment plan used for the election of members of each governmental unit was invalid, and it subsequently approved a new plan submitted by the defendants as "constitutionally acceptable and equitable". It signed an order to this effect on April 7, 1972, requiring elections to be held pursuant to its plan, and did not reserve jurisdiction. Elections were held under this reapportionment plan in 1972, 1974 and 1975.

In February, 1976, prior to the School Board elections of that year, plaintiffs instituted the present action, initially against the Police Jury only, claiming that the reapportionment plan adopted by the court at the end of the 1971 litigation is itself unconstitutional. The district court denied motions to dismiss on grounds of res judicata and collateral estoppel, and issued an ex parte order declaring the existing apportionment plan unconstitutional, enjoining future elections under it, and requiring the submission of a new plan by the defendants. The plaintiffs later filed an amended complaint joining the School Board as a defendant, but the Board had neither been served nor given an opportunity to be heard before the order was signed. The Police Jury has since reached a compromise on a new apportionment plan applicable to its elections, and a motion to dismiss the appeal as to it was granted on September 8, 1976. We thus consider only the issues raised by the School Board's appeal from the order entered against it before it was even joined as a defendant.

American citizens have a constitutional right to participate fully and effectively in the election of county governmental authorities, *Avery v. Midland County,* 1968, 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45. Reapportionment plans, whether adopted by legislative enactment or court order, are not immutable. The judicial process must be flexible enough to allow challenges to schemes that have, because of changing population patterns and a developing body of constitutional jurisprudence, become unconstitutional in their operation.

In Louisiana, each parish governing authority is required to examine its apportionment plan within six months after the official release of every decennial census to determine whether there exists any substantial variation in the representation of election districts. La.Rev.Stat.Ann. § 33:1411 (West Supp.1978). If the decennial census discloses a change in the population pattern sufficient to require a new apportionment plan, it is the duty of the legislative body to reapportion itself, and, if it fails to do so, then a voters group clearly has the right to demand judicial relief. *See Zimmer v. McKeithen,* 5 Cir. en banc 1973, 485 F.2d 1297, *aff'd sub nom., East Carroll Parish School Board v. Marshall,* 1976, 424 U.S. 636, 96 S.Ct. 1083, 47 L.Ed.2d 296; *Kirksey v. Board of Supervisors,* 5 Cir. en banc 1977, 554 F.2d 139, *cert. denied,* 1977, 434 U.S. 968, 98 S.Ct. 512, 54 L.Ed.2d 454, and cases cited therein.

Decennial reapportionment is a "presumptively rational method to avoid 'daily, monthly, annual or biennial reapportionment' as population shift[s]", *Whitcomb*

*v. Chavis,* 1971, 403 U.S. 124, 163, 91 S.Ct. 1858, 1879, 29 L.Ed.2d 363, 387, quoting *Reynolds v. Sims,* 1964, 377 U.S. 533, 583, 84 S.Ct. 1362, 1393, 12 L.Ed.2d 506, 540, but this does not mean that a political body cannot be compelled to reapportion itself more than once every 10 years. *Reynolds v. Sims, supra,* 377 U.S. at 584, 84 S.Ct. at 1393, 12 L.Ed.2d at 540; *Whitcomb v. Chavis,* 403 U.S. at 163, 91 S.Ct. at 1879, 29 L.Ed.2d at 387. Thus, in *Whitcomb,* the district court had denied reapportionment in 1965. In a later action it ordered reapportionment, "not . . . as a result of population shifts since the 1965 . . . decision, but only because the disparities among districts which were thought to be permissible at the time of that decision had been shown by intervening decisions of [the Supreme] Court to be excessive." 403 U.S. at 163, 91 S.Ct. at 1879, 29 L.Ed.2d at 387. Or, after a judicial reapportionment, a new census may show that the plan impinges on the rights of minorities to participate in the political process; when this is the case, it is the duty of the court to find it constitutionally unacceptable, whatever its source. *See, e. g., Kirksey v. Board of Supervisors, supra,* 554 F.2d at 142–43; *Ferguson v. Winn Parish Police Jury,* 5 Cir. 1976, 528 F.2d 592, 597–99.

■ A challenge to the constitutionality of a court-ordered reapportionment plan is not, in either case, precluded by principles of res judicata or collateral estoppel. It has long been established that res judicata is no defense where, between the first and second suits, there has been an intervening change in the law or modification of significant facts creating new legal conditions. *See, e. g., Commissioner of Internal Revenue v. Sunnen,* 1948, 333 U.S. 591, 599–602, 68 S.Ct. 715, 720–21, 92 L.Ed. 898, 906–08; *State Farm Mutual Automobile Insurance Co. v. Duel,* 1945, 324 U.S. 154, 162, 65 S.Ct. 573, 577, 89 L.Ed. 812, 819. In these cases, the operation of the preclusion doctrines would result in unequal treatment of similarly situated individuals, some of whom have the misfortune to have sought legal redress at an earlier phase of legal developments.

■ Such inequity becomes particularly intolerable when, as here, constitutional rights are involved. This court has thus been unwilling to bar subsequent challenges to reapportionment schemes, seemingly constitutional when instituted by the court, but apparently inadequate under the rapidly changing jurisprudence in this area. *See, e. g., Parnell v. Rapides Parish School Board,* 5 Cir. 1977, 563 F.2d 180, 185; *Moch v. East Baton Rouge Parish School Board,* 5 Cir. 1977, 548 F.2d 594, 598, *cert. denied,* 1977, 434 U.S. 859, 98 S.Ct. 183, 54 L.Ed.2d 132. *Cf. Christian v. Jemison,* 5 Cir. 1962, 303 F.2d 52, *cert. denied,* 1962, 371 U.S. 920, 83 S.Ct. 287, 9 L.Ed.2d 229. As Judge Wisdom wrote in *Parnell v. Rapides Parish School Board, supra,* 563 F.2d at 185, "Faced with changing law, courts hearing questions of constitutional right cannot be limited by res judicata. If they were, the Constitution would be applied differently in different locations."

The plaintiffs' contentions are not articulated clearly either in their complaint or in their brief. The 1972 court order was based on the 1970 census. No error in the facts on which the court acted is alleged, nor do the plaintiffs contend that there has been a change in the parish population sufficiently momentous to warrant intra-decadal reapportionment. Moreover, the plaintiffs appear to seek relief on the basis of one voter one vote, not racial discrimination, the identical ground asserted in 1971. We need not, therefore, consider what voting deprivations, if any, would warrant a disruption in the procedure required by the state, reapportionment once a decade based on an official census, whether the claim is based on unequal voting, *Reynolds v. Sims, supra,* as made applicable to parishes by *Avery, supra,* or discrimination against minority groups.

The grounds on which plaintiffs do rest appear to be of two kinds, one factual, the plan has not "worked" as the court intended; the other legal, the plan was constitutionally incorrect because it required multimember districts and later Supreme Court

decisions show that was improper. *Compare Whitcomb v. Chavis, supra.* In either event, the attack is on the court-ordered plan, yet the complaint does not seek to have it set aside or modified, but asks that the School Board be ordered to reapportion itself.

■ If the plaintiffs wish to present *new* evidence, not part of the record, concerning events that have occurred since the prior decree, they should amend their complaint accordingly, and the court should then hold an evidentiary hearing. Before a trial court may set aside an apportionment plan because it dilutes minority voting strength, it must make findings of fact according to the criteria set forth in *White v. Regester,* 1973, 412 U.S. 755, 765–67, 93 S.Ct. 2332, 2339–40, 37 L.Ed.2d 314, 324–25, supporting that conclusion. *Parnell v. Rapides Parish School Board, supra,* 563 F.2d at 184; *Nevett v. Sides,* 5 Cir. 1976, 533 F.2d 1361, 1365; *Zimmer v. McKeithen, supra,* 485 F.2d at 1304–05. Such findings of fact can be made only after a hearing at which both parties have an opportunity to be heard. This is a basic requirement of due process. As we held in *Thompson v. Madison County Board of Education,* 5 Cir. 1973, 476 F.2d 676, 678:

> Due process mandates that a judicial proceeding give the affected parties an opportunity to be heard on the allegations asserted in the complaint and to present evidence and argument on the contested facts and legal issues framed by the answer to the complaint. Before a district court adjudges, it must determine the facts for itself on the basis of the proffered evidence. . . . In short, a court can only render a judgment after the parties have been afforded a full and fair trial on the claims properly before the court.

Challenges to apportionment schemes are also subject to this injunction. *See London v. East Feliciana Parish Police Jury,* 5 Cir. 1973, 476 F.2d 637.

■ If the plaintiffs contend merely that the former decision is now legally incorrect because of intervening higher court decisions, they should articulate that claim and the School Board should have an opportunity to respond. *See, e. g., Parnell v. Rapides Parish School Board,* W.D.La.1976, 425 F.Supp. 399, *aff'd,* 5 Cir. 1977, 563 F.2d 180.[1] However, a plan is not constitutionally impermissible as a matter of law merely because it includes multimember districts. *East Carroll Parish School Board v. Marshall,* 1976, 424 U.S. 636, 639, 96 S.Ct. 1083, 1085, 47 L.Ed.2d 296, 299; *Chapman v. Meier,* 1975, 420 U.S. 1, 15–21, 95 S.Ct. 751, 760–63, 42 L.Ed.2d 766, 777–81; *Burns v. Richardson,* 1966, 384 U.S. 73, 88, 86 S.Ct. 1286, 1294, 16 L.Ed.2d 376, 388. The use of multimember districts in court-ordered plans may be an abuse of discretion absent special circumstances, *see, e. g., East Carroll Parish School Board v. Marshall, supra,* 424 U.S. at 639, 96 S.Ct. at 1085, 47 L.Ed.2d at 299; *Wallace v. House,* 5 Cir. 1976, 538 F.2d 1138, 1142, *cert. denied,* 1977, 431 U.S. 965, 97 S.Ct. 2921, 53 L.Ed.2d 1060, but the parties must still be given the opportunity to show whether or not such circumstances exist as a matter of fact, and at least to brief their positions as a matter of law.

■ The court's failure to require the plaintiffs to elucidate their legal position (and to the extent it required factual support, to present evidence concerning it) and to afford an adversary opportunity to the School Board requires that we vacate its order and remand for an appropriate hear-

---

1. The plaintiffs might have moved under Rule 60(b)(5), F.R.C.P., for relief from the prior judgment on the grounds that it "is no longer equitable that the judgment should have prospective application." Plaintiffs did not seek to overturn elections that took place under the challenged apportionment scheme, but to secure a modification of the plan before any more elections were held. A Rule 60(b) motion would have allowed the judge to consider within a single action all issues relating to the DeSoto Parish apportionment plan. *Cf. Hines v. Rapides Parish School Board,* 5 Cir. 1973, 479 F.2d 762. We note, however, that in reapportionment, unlike school desegregation and institutional reform cases, the court's jurisdiction is not continuing, and the plan, once adopted and acted upon, does not require further judicial supervision.

ing on the issues raised by plaintiffs' complaint.

VACATED AND REMANDED.