# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-20117

United States Court of Appeals
Fifth Circuit

**FILED**

February 3, 2016

Lyle W. Cayce
Clerk

HOUSTON PROFESSIONAL TOWING ASSOCIATION,

Plaintiff–Appellant,

versus

CITY OF HOUSTON,

Defendant–Appellee.

Appeals from the United States District Court
for the Southern District of Texas

Before JONES and SMITH, Circuit Judges, and FITZWATER, District Judge.*
JERRY E. SMITH, Circuit Judge:

Houston Professional Towing Association ("HPTA") brings its third lawsuit challenging SafeClear, the freeway towing program run by the City of Houston based on amendments to the program made in 2009 and 2011. HPTA contends that the program is preempted by 49 U.S.C. § 14501 and violates its

---

* District Judge of the Northern District of Texas, sitting by designation.

No. 15-20117

commercial-speech rights. HPTA appeals an adverse summary judgment. Finding both of its contentions barred by res judicata, we affirm.

I.

In 2004, the city enacted Ordinance No. 2004-497, which created a freeway towing program known as SafeClear to address congestion and safety issues. The city contracted with eleven towing companies to patrol various freeways around the clock and to remove wrecked and disabled vehicles. In 2005, HPTA, which represents tow operators in the Houston area (none of which was awarded a SafeClear contract), sued in federal court. Among other claims, HPTA argued that the ordinance was barred by the 49 U.S.C. § 14501, which preempts state laws "related to a price, route, or service of any motor carrier." *Id.* at § 14501(c)(1). The district court concluded that the portions of the ordinance that regulated consent tows (tows requested by the owner) and prohibited "qualified tow operators from operating on major freeways" were preempted. *Hous. Prof'l Towing Ass'n v. City of Hous.*, No. CIV. A. H-05-0323, 2005 WL 2121552, at *12 (S.D. Tex. Aug. 31, 2005) ("*SafeClear I*").

The city amended the ordinance to bring it into compliance. In 2006, HPTA filed a second suit (this time in state court), challenging the amended ordinance and again arguing that it was preempted by 49 U.S.C. § 14501. HPTA also averred that the ordinance infringed on its commercial speech. The city removed to federal court, and the district court entered summary judgment, holding that the ordinance was not preempted by § 14501. *Hous. Prof'l Towing Ass'n v. City of Hous.*, No. CIV. A. H-06-1174, 2008 WL 1782278, at *1–3, *6 (S.D. Tex. Apr. 16, 2008) ("*SafeClear II*"). The court specifically noted the safety and non-consent exceptions to the statute, which allow states to regulate for safety purposes as well as to regulate tows conducted without the owner's consent. *See id.* at *2; 49 U.S.C. § 14501(c)(2)(A), (C). The court also rejected

2

No. 15-20117

the commercial-speech claims. *SafeClear II*, 2008 WL 1782278, at \*5.

In 2009, by Ordinance No. 2009-1347, the City made a minor amendment to SafeClear, which clarified that tow operators were not allowed to solicit business at the scene of an accident until the police had departed. Previously, the city code stated that tow operators could not solicit business at an accident scene until the police had completed their investigation or authorized solicitation. *See* Houston Code of Ordinances § 8-128.

In May 2011, the city again amended the SafeClear program[1] by Ordinance No. 2011-324, which required vehicle owners to pay for the SafeClear tows of vehicles stalled on the shoulder; previously the city had paid for those tows. An agreement with SafeClear operators set the rate at $50. Notably, before the 2011 amendments, SafeClear already had required the owners of vehicles that were blocking traffic lanes to pay for towing, and tow operators are allowed to charge up to $160. If the owner cannot pay for towing a stalled vehicle from the shoulder, the tow operator is required to tow the vehicle to a licensed storage facility that is lighted and manned on a twenty-four-hour basis. The owner cannot be charged storage fees for the first forty-eight hours. *See* Houston Code of Ordinances § 8-127(5). The preamble to Ordinance No. 2011-324 noted that the SafeClear program "expeditiously clear[s] stalled and wrecked vehicles from Houston's freeways" and explained that the "elimination of free towing and minor roadside assistance to citizens would alleviate the City's financial obligations."

In November 2011, HPTA filed this third suit, in state court, again alleging that amendments to SafeClear are preempted by 49 U.S.C. § 14501,

---

[1] There have been minor later amendments to the SafeClear program, but they are not at issue in this suit.

3

No. 15-20117

infringe on its members' commercial speech, and constitute a regulatory taking.[2] The City again removed to federal court and maintained that the suit was barred by res judicata. The district court denied the city's motion to dismiss, determining that the city had not met its burden of proof with respect to res judicata nor defeated the claim of preemption. After additional briefing, the court granted the city's motion for summary judgment, deciding that the SafeClear amendments were not a substantive change to the program that could form the basis for a new claim of federal preemption, so res judicata applied. HPTA appeals.

## II.

## A.

"Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). "[R]es judicata encompasses two separate but linked preclusive doctrines: (1) true res judicata or claim preclusion and (2) collateral estoppel or issue preclusion." *Comer v. Murphy Oil USA, Inc.*, 718 F.3d 460, 466–67 (5th Cir. 2013) (quoting *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005)). True res judicata "bars the litigation of claims that either have been litigated or should have been raised in an earlier suit," *Test Masters*, 428 F.3d at 571, while collateral estoppel "precludes relitigation of only those issues actually litigated in the original action, whether or not the second suit is based on the same cause of action," *Moch v. E. Baton Rouge Par. Sch. Bd.*, 548 F.2d 594, 596 (5th Cir. 1977); *see also Allen*, 449 U.S. at 94. The city claims that the

---

[2] HPTA does not address the regulatory-takings claim in its brief. Failure adequately to brief an issue on appeal is waiver. FED. R. APP. P. 28(a)(8)(A); *United States v. Beaumont*, 972 F.2d 553, 563 (5th Cir. 1992).

suit is barred by res judicata.[3]

### 1.

"Res judicata 'has four elements: (1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions.'" *Comer*, 718 F.3d at 467 (quoting *Test Masters,* 428 F.3d at 571). HPTA does not contest the application of the first three elements; the dispute centers on whether "the same claim or cause of action" exists here and in *SafeClear II.*

We apply a transactional test to determine "whether two suits involve the same claim or cause of action."[4] The transactional test focuses on whether the two cases "are based on 'the same nucleus of operative facts.'"[5] It is the "nucleus of operative facts, rather than the type of relief requested, substantive theories advanced, or types of rights asserted" that defines the claim.[6] Indeed,

> [w]hat factual grouping constitutes a "transaction", and what groupings constitute a "series", are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

*Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 396 (5th Cir. 2004) (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 24(2)).

---

[3] Nevertheless, the city cites both res judicata and collateral estoppel cases in its brief.

[4] *United States v. Davenport,* 484 F.3d 321, 326 (5th Cir. 2007); *see also* RESTATEMENT (SECOND) OF JUDGMENTS § 24(2) (1982) (outlining the transactional test).

[5] *Davenport*, 484 F.3d at 326 (quoting *In re Southmark Corp.*, 163 F.3d 925, 934 (5th Cir. 1999)).

[6] *Id.*

No. 15-20117

B.

HPTA contends that both the language of the ordinance and the "factual predicate" underlying the program have changed. Because of this, HPTA contends that there is a differing claim or cause of action. The SafeClear program has been amended since the last suit, and one might conceive of those amendments as a change in the "operative facts" or, alternatively, as a change in law. Indeed, in addition to discussing the transactional test, see *Test Masters,* 428 F.3d at 571, HPTA cites cases in which we have found that a "change in law" defeats the application of res judicata.[7]

Whether HPTA conceives of both the change-in-law and the change-in-facts arguments as fitting under the fourth prong of the res judicata test, or whether HPTA views them as two separate bases for rejecting res judicata is uncertain. Our precedent is less than certain.[8] Indeed, in *Moch*, 548 F.2d at 598, we noted the difficulty in untangling whether a change in the governing law should be conceived of as more factual or legal, but we declined to shed light on the question.[9] Additionally, the scope and overall applicability of the change-in-law doctrine is unresolved.[10] Nevertheless, we need not decide

---

[7] *See Jackson v. DeSoto Par. Sch. Bd.*, 585 F.2d 726, 729 (5th Cir. 1978); *Moch*, 548 F.2d at 597.

[8] *Compare Jackson*, 585 F.2d at 729 (discussing change in law and change in facts together and implying that they are the same exception or at least related) *with Kirksey v. City of Jackson*, 714 F.2d 42, 44 (5th Cir. 1983) (discussing the change-in-law exception without mentioning changes in fact).

[9] *See Moch*, 548 F.2d at 598 (observing that a "supervening change in the caselaw [could] render[] a subsequent claim a different cause of action" or could be "an altered circumstance").

[10] We have discussed a change-in-law exception that would defeat res judicata. *See Wilson v. Lynaugh*, 878 F.2d 846, 850–51 & n.13 (5th Cir. 1989); *Kirksey*, 714 F.2d at 44; *Jackson*, 585 F.2d at 729; *Moch*, 548 F.2d at 597; *Parnell v. Rapides Par. Sch. Bd.*, 563 F.2d 180, 185 (5th Cir. 1977). The Supreme Court has provided limited support for this exception. *See State Farm Mut. Auto. Ins. Co. v. Duel*, 324 U.S. 154, 162 (1945) (observing that "res judicata is no defense where between the time of the first judgment and the second there has

No. 15-20117

whether the change-in-law exception continues to have force or whether that exception and the differing-claim exception are one and the same, because, for purposes of our limited discussion, the inquiries are remarkably similar.

At least in this case, where, in both the past and present suit, the plaintiff is challenging the ordinance itself, the relevant facts for determining whether the same claim or cause of action exists and whether a change-in-law exception applies are identical—the language of the ordinance.[11] The standards are also similar. Where we have applied the change-of-law exception, we have required the change to be "significant."[12] Likewise, we have required factual changes to be "significant." *Wilson*, 878 F.2d at 851; *Jackson*, 585 F.2d at 729. Thus, the critical question is not whether *any* facts or law have changed between *SafeClear II* and this suit, but whether there have been any

---

been an intervening decision or a change in the law creating an altered situation"). Nevertheless, in other decisions we have been more skeptical. *See Baylor v. U.S. Dep't of Hous. & Urban Dev.*, 913 F.2d 223, 225 (5th Cir. 1990)*; Nilsen v. City of Moss Point*, 701 F.2d 556, 563–64 (5th Cir. 1983). The Supreme Court has also declined to endorse a change-in-law exception, at least where the change in law is judge-made. *See Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398–99 (1981).

Even where we have upheld a change in law, we have noted the exception's limited applicability. *See Moch*, 548 F.2d at 596–97 ("Generally, a postjudgment change of circumstances, either factual or legal, does not alter that judgment's effect as a bar to later actions based on the same cause of action."); *Wilson*, 878 F.2d at 850 (collecting cases). The change-in-law exception may be confined to cases of "overriding public policy" or "manifest injustice." *Moch*, 548 F.2d at 597. Likewise, the doctrine may be limited to constitutional claims. *See Jackson*, 585 F.2d at 729; 18 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 131.21[2] (3d ed. 2015); 18 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4415 (2d ed. 2002).

[11] Contrast this with the situation where the plaintiff was not challenging the law itself in the original suit, but the application of the law to facts (for example, whether the plaintiff was negligent). In such a scenario, a change in the governing law (the standard for negligence) would be different from a change in the underlying facts (a new instance of purportedly negligent behavior), and the two inquiries would be quite different.

[12] *Kirksey*, 714 F.2d at 44–45 (explaining that "plaintiffs can retry their claims in light of any significant changes in statutory or decisional law"); *see also Parnell*, 563 F.2d at 185 (discussing the significant change in law that defeated res judicata).

## No. 15-20117

significant changes—whether the factual and legal basis undergirding HPTA's claim of preemption has changed.[13]

### C.

Title 49 U.S.C. § 14501(c)(1) prohibits any state (or its political subdivision) from "enact[ing] or enforc[ing] a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . with respect to the transportation of property." Nevertheless, the statute does "not restrict the safety regulatory authority of a State with respect to motor vehicles."[14] "Local regulation of prices, routes, or services of tow trucks" must be "genuinely responsive to safety concerns" to escape preemption under § 14501(c)(1).[15] Thus, to establish preemption, HPTA must demonstrate that the SafeClear program (in whole or part) is not genuinely responsive to safety concerns.

To determine whether the safety exception under § 14501(c)(2)(A) applies, we have looked to statements of intent on the face of the ordinance, demonstrating that it was designed to promote safety, as well as to evidence that there was a "nexus between th[e] ordinance and public safety." *VRC LLC v. City of Dall.*, 460 F.3d 607, 614–15 (5th Cir. 2006) (citing *Loyal Tire & Auto Ctr., Inc. v. Town of Woodbury*, 445 F.3d 136, 145 (2d Cir. 2006)). We have also noted the economic burden on those regulated by the ordinance. *Id.*

---

[13] Given the uncertainty surrounding the change-of-law exception, and because the change-of-law and same-claim-or-cause-of-action inquiries are analogous here, we confine ourselves to the language of the same-claim-or-cause-of-action analysis. Even if we were to apply the change-of-law exception, the amendments to SafeClear were not significant, as we discuss, so they would not bar the application of res judicata.

[14] 49 U.S.C. § 14501(c)(2)(A). Likewise, municipalities are permitted to regulate for purposes of safety. *See City of Columbus v. Ours Garage & Wrecker Serv., Inc.*, 536 U.S. 424, 429 (2002).

[15] *City of Columbus*, 536 U.S. at 442.

No. 15-20117

1.

Thus, the facts relevant for purposes of preemption relate to (1) whether the ordinance evinced a safety purpose and (2) whether it promotes safety. It is difficult to see how changing who pays for the tows of stalled vehicles affects either of these issues. In regard to purpose, the ordinance is clear; in its preamble to the 2005 amendments (which significantly revised the program in the wake of S*afeClear I*) the City explained,

> [T]he volume and the speed of traffic on the City's freeways together with the proven safety dangers associated with wrecked or stalled vehicles on freeways necessitates the City's institution of a program to effect the prompt removal of wrecked or stalled vehicles from freeways in order to protect the lives and the property of motorists on those roadways . . . .

Houston Ordinance No. 2005-271. The preamble also contains a number of clauses discussing the safety motivations for the SafeClear program. There is no doubt that safety is the justification for SafeClear.

Instead, HPTA points to the preamble to Ordinance No. 2011-324 and maintains that we should look at the stated reasons for the 2011 amendments, which form the basis for this suit. This preamble notes the fiscal motivations for passing on the cost of towing to vehicle owners, explaining that "elimination of free towing and minor roadside assistance to citizens would alleviate the City's financial obligations by reducing its annual contribution to SafeClear." Houston Ordinance No. 2011-324. Nevertheless, the preamble also notes the safety-related benefits of SafeClear (the program "assists citizens and improves mobility by expeditiously clearing stalled wrecked vehicles form Houston's freeways"). *Id.*

HPTA's argument based on the preamble is unpersuasive. To determine whether the ordinance is preempted, we must look to the stated intent for the

9

No. 15-20117

SafeClear program as a whole. To hold otherwise would mean that if a government program is modified to cut costs, it is impossible for it to fulfill its original purpose. Before the 2011 amendments, SafeClear already required vehicle owners who were blocking traffic lanes to pay for the costs of towing, and that provision is not challenged in the current suit. Thus, finding the 2011 amendments preempted because they were designed to save the city money would create the bizarre result that one SafeClear provision requiring vehicle owners to pay for towing would be preempted and one would not, based on the accident of its passage.

Alternatively, finding Ordinance No. 2011-324 preempted would suggest that if a safety regulation passes on costs to citizens, it is preempted. But we have explicitly rejected that position. *See VRC*, 460 F.3d at 615 (opposing the notion that because a safety ordinance created a compliance cost for property-owners, it must be preempted).

Although the goal of the 2011 amendments may have been to cut costs (and to make SafeClear fiscally sustainable over the long term), there is no doubt that the continuing purpose of the program is to promote safety by expeditiously clearing stalled and wrecked vehicles. Thus, for purposes of intent, the relevant language is found in the preamble to Ordinance No. 2005-271, which outlines the purpose behind the entire SafeClear program, not just the motivation for specific amendments. Therefore, the overall purpose of Safe-Clear (and thus the relevant "facts") remains the same between *SafeClear II* and this litigation.

2.

HPTA also posits that the on-the-ground facts regarding whether Safe-Clear actually promotes safety have changed. HPTA points to expert testimony that the number of SafeClear tows has decreased since the adoption of

No. 15-20117

the $50 vehicle owner fee. HPTA contends that that fact demonstrates that SafeClear operators are shirking their duties to respond to tow vehicles that are stalled in the shoulder, opting instead to tow vehicles from collisions at the higher cost of $160. Thus, according to HPTA, requiring the owners of stalled vehicles to pay $50 fees undermines safety.

Yet, HPTA's claim is pure speculation. The city provided expert testimony that in 2013, almost 98% of all SafeClear tows were responded to within six minutes, undermining HPTA's charge of shirking. The city's expert, Dr. Stein, posited that one explanation for the decline in SafeClear tows may be that, since the adoption of the $50 towing fee, vehicle owners are opting to call their own tow trucks rather than waiting for police to do so. If this explanation is correct, HPTA members have little to complain about, because the $50 fee makes it more likely that a stranded motorist will call an HPTA operator to tow the vehicle to safety.[16]

Although the city's expert noted that the total number of collisions on Houston's freeways has increased over time, that could be the result of factors such as population growth.[17] Indeed, overall, Stein found that the adoption of fees had no statistically significant effect on "the incidence of freeway

---

[16] HPTA urges that SafeClear has placed a significant economic burden on its members who are excluded from the program, but that exclusion existed before the 2011 amendments. If anything, as discussed above, the 2011 amendments appear to make it more likely that a non-SafeClear operator is called, thus reducing any economic burden to HPTA members.

[17] The City's expert also found an increase in overall clearance times since 2011, which is a "factor contributing to collisions." Nevertheless, 83% of tows still were cleared within twenty minutes between 2011 and 2012, which is well over the program goal of 75%. Stein posited that the increased clearance time may result from a higher number of collision tows (themselves a probable result of the overall increase in collisions), which take longer to clear than for stalled vehicles. Because vehicle owners involved in collisions blocking traffic were already required to pay towing fees before the 2011 amendments, if this explanation is correct, it is unlikely that the 2011 changes affected the increase in duration times.

collisions."    Instead, the city's expert found "strong evidence" that the SafeClear program has "had a significant effect on reducing collisions on the Houston freeways."

HPTA does little to rebut this evidence.  It points out that the proper variable to measure is secondary accidents (which occur as the result of primary collisions), because secondary accidents are what prompt towing is supposed to reduce.  Instead, the city presented evidence regarding overall collisions.  Although HPTA may be correct that secondary collisions would be a more accurate measure of SafeClear's success, nevertheless, as HPTA's own expert observes, information regarding secondary collisions is not available.  Overall, HPTA has not demonstrated that charging fees for shoulder tows has had an impact on SafeClear's ability to promote safety on Houston's roads.

Absent evidence that the 2011 amendments negatively impacted SafeClear's ability to be "genuinely responsive to safety concerns," HPTA's other arguments regarding the overall effectiveness of SafeClear are foreclosed. HPTA has failed to show that the 2011 amendments changed SafeClear's purpose of promoting safety or its actual ability to promote safety.  In other words, HPTA has not demonstrated that there has been a change in the relevant facts undergirding its claim of federal preemption since the last suit.  The nucleus of operative facts remains the same. The claim of federal preemption is barred by res judicata.

## D.

There is another reason why HPTA cannot demonstrate that the 2011 amendments have had an impact on its claims of federal preemption.  Section 14501(c)(2)(C) contains an additional basis for local regulation of towing to be exempted from federal preemption:  Local governments may "enact or enforce a law, regulation, or other provision relating to the price of for-hire

motor vehicle transportation by a tow truck, if such transportation is per-formed *without the prior consent* or authorization of the owner or operator of the motor vehicle." (Emphasis added.)[18]  Indeed, as the district court noted in *SafeClear II*, to the extent that SafeClear regulates tows without the owner's consent, that is an independent basis for the program to be exempt from federal preemption.  *See SafeClear II*, 2008 WL 1782278 at \*2.  The 2011 amendments to SafeClear apply only to non-consent tows (which occur when a police officer requests the tow).  *See* Houston Code of Ordinances § 8-123(a).  Consent tows (where the vehicle owner requests the tow) are exempt from set fees.  *See id.* §§ 8-101, 8-103(c)(3), 8-123(a)–(b).  Thus, the 2011 amendments cannot be pre-empted, because they apply only to non-consent tows.  Those amendments create no new facts which could form a basis for preemption.  Therefore, even apart from the safety exception, res judicata precludes HPTA's claims of fed-eral preemption.[19]

## E.

HPTA also claims that the 2009 amendment, which stated that tow oper-ators could not solicit business at the scene of an accident until after police had departed, infringes on its commercial-speech rights.  HPTA made a similar argument in *SafeClear II*.[20]  Thus, HPTA's First Amendment argument also is

---

[18] This was the version of 49 U.S.C. § 14501(c)(2)(C) in force when these parties filed their briefs.  In December 2015, Congress amended this section to read, "[This provision] does not apply to the authority of a State or a political subdivision of a State to enact or enforce a law, regulation, or other provision relating to *the regulation of tow truck operations* performed without the prior consent or authorization of the owner or operator of the motor vehicle." (Substituted text in italics).  The amendment is not significant for our purposes.  If anything, it increases the ability of local government to regulate non-consent tows, because local regu-lations are no longer confined to the price of transportation.

[19] Thus, HPTA's claim that the city's definition of non-consent tows is overinclusive is precluded.  There has been no change in the facts affecting this definition between *SafeClear II* and the present suit.

[20] *See SafeClear II*, 2008 WL 1782278 at \*6 (challenging SafeClear's requirement that

barred by res judicata.

Before the 2009 amendment, Houston Code of Ordinances § 8-128 made it "unlawful for any wrecker driver to solicit the business of towing, removing or repairing any abandoned or disabled vehicle at a police scene by words, cards, circulars or gestures, until such time as a law enforcement officer has completed his investigation or authorized the action." Thus, the ordinance already prohibited solicitation at police scenes. All the 2009 amendment did was clarify that tow operators could not solicit business until "all law enforcement officers have departed the scene."

Though there might be a short delay between when an officer concludes an investigation and when he leaves the accident scene, requiring tow operators to wait to solicit business slightly longer under the new language,[21] this is a distinction without a difference for First Amendment purposes. Allowing a tow operator to solicit business a few minutes earlier does not affect the commercial-speech analysis. The important fact remains the same both before and after the amendment—tow operators are being excluded from solicitation at accident scenes while police are working. Thus, no significant changes have occurred between *SafeClear II* and this suit. The claim and cause of action are identical. HPTA's commercial-speech claim is barred by res judicata.

The summary judgment is AFFIRMED.

---

tow operators wait until police have concluded their investigation to solicit business).

[21] Or, alternatively, a small delay could be the result of the officers' no longer being permitted to authorize tow operators to solicit business before the officers leave the scene.