418 So.2d 847 (1982)
NATIONAL SURETY CORPORATION, a Corporation
v.
APPLIED SYSTEMS, INC., a Corporation.
Max G. COFFEY, Robert S. Sawyer and Data Plus, Inc.
v.
APPLIED SYSTEMS, INC., a Corporation.
80-400, 80-402.
Supreme Court of Alabama.
July 9, 1982.
As Corrected on Denial of Rehearing August 27, 1982.
*848 William E. Johnston, of Johnston, Johnston & Kendall, Mobile, for appellant Nat. Surety Corp.
Herndon Inge, Jr., of Inge, McMillan & Inge, Mobile, for appellants Max G. Coffey, Robert S. Sawyer, and Data Plus, Inc.
Gordon O. Tanner of McDermott, Slepian, Windom & Reed, Mobile, for appellee.
ALMON, Justice.
These are appeals from a judgment finding that Max G. Coffey and Robert S. Sawyer converted certain "property" of Applied Systems, Incorporated, to their own use and finding National Surety Corporation liable to Applied Systems on an indemnity bond as a result of the conversion by Coffey and Sawyer. We affirm.
Mr. W. E. Greer organized Applied Systems, Inc., in September, 1972, to provide computer services to businesses in Mobile. Mr. Greer hired Mr. Max Coffey in January, 1973, to write computer programs, for which he was paid a salary. Mr. Robert S. Sawyer was hired by Applied Systems in mid-1973 as a computer operator.
The customary business procedure was that a customer would bring raw data to Applied Systems and receive output based on the customer's particular needs. For example, the customer would bring his employee time cards and Applied Systems would have the computer print checks, W-2 forms, and financial statements, depending on the program the customer wanted. All the programs were somewhat unique in that they related to particular customers. Kaiser Aluminum Company was a client of Applied Systems. The Kaiser payroll system alone had approximately 58 programs.
Coffey and Sawyer decided to go into the computer business for themselves and left Applied Systems on December 23, 1977. Early in January, 1978, they incorporated Data Plus, Inc. Several former customers of Applied Systems came to Data Plus to get their payrolls run. Kaiser's payroll was being run by Data Plus shortly after it was incorporated. When Applied Systems learned this, it applied for and was granted a temporary restraining order and a preliminary injunction. Included in the complaint was a claim against Coffey, Sawyer and Data Plus for damages for the conversion of several of its computer tapes and programs.
On November 27, 1978, Applied Systems filed a complaint against National Surety Corporation on an indemnity bond, alleging fraudulent or dishonest acts committed by Coffey and Sawyer while employed by Applied Systems. The suit for damages and the suit on the indemnity bond were consolidated.
National Surety filed a third-party complaint against Coffey and Sawyer, seeking a judgment against them for any sums that it might have to pay Applied Systems.
The jury rendered three verdicts:
1. Applied Systems was awarded a $25,000 verdict against Coffey, Sawyer and Data Plus;
2. Applied Systems was awarded $25,000 against National Surety; and
3. National Surety was awarded $25,000 against Coffey and Sawyer on its third-party claim.
The main contention by the appellants is that the trial court erred in submitting the conversion claim to the jury because computer programs cannot be converted, or, in the alternative, because there was no evidence of any "tangible" personal property being taken.
*849 To constitute conversion, there must be a wrongful taking or a wrongful detention or interference, or an illegal assumption of ownership, or an illegal use or misuse. Ott v. Fox, 362 So.2d 836 (Ala. 1978).
"The case law of Alabama establishing the essential requisites for the maintenance of a cause of action in conversion has long been firmly established. There are four different actions which constitute conversion: (1) A wrongful taking; (2) an illegal assumption of ownership; (3) an illegal use or misuse; and (4) a wrongful detention. Only the fourth action requires proof that the plaintiff demanded the return of the converted property and that the defendant refused that return."
Raley v. Royal Insurance Co., Ltd., 386 So.2d 742 (Ala. 1980) (Torbert, C.J., concurring specially).
After an examination of the record, we are of the opinion that there was sufficient evidence to support the judge's decision to submit the case to the jury.
Mr. Greer testified that one customer who had taken his business to Data Plus returned to Applied Systems and asked it to continue processing his data. Applied Systems then discovered it did not have the programs or the master files with which to do so. Shortly thereafter Data Plus returned these materials to Applied Systems.
Mr. Greer also testified that after normal working hours on October 25, 1977, he found Mr. Coffey, along with certain employees of the Honeywell Corp., at the office of Applied Systems. There were computer parts on the floor, and Mr. Coffey told Mr. Greer they were merely working on the computer. However, at approximately the same time as the incident with the computer parts occurred at Applied Systems, a computer similar to the one used by Applied Systems was being readied by Honeywell for Coffey and Sawyer. The inference the jury could draw from this, since parts from the two computers were interchangeable, was that parts from the Applied Systems computer were being taken to be used on the computer eventually used by Data Plus. It is significant that the computer bought by Data Plus was compatible with the one used by Applied Systems in that the programs involved could have been run on either computer, and they were the only such computers in the area.
Mr. Herbert Richardson, the president of a computer software specialty house, testified that he had examined the programs in question and estimated that to create the Kaiser programs alone would take 471.70 man days. According to Mr. Richardson the programs were unique and no software house would have these for sale. He also stated that in his opinion the programs would have had to be copied in order to be operational in the time period involved.
There was sufficient evidence of either a wrongful taking, an illegal assumption of ownership, or an illegal use or misuse of the programs and possibly other computer related items, to submit the case to the jury.
A computer program, in appropriate circumstances, can be the subject of conversion. The appellants argue that because Mr. Coffey developed the programs while at Applied Systems he could not convert them because they were his own property. But even though he developed the program, he did not have any property rights or interest in the programs. He developed the programs for Applied Systems, which facilitated the development of the programs and provided financial backing. Applied Systems had a definite property interest in the programs and that interest should be protected.
The appellants rely on Code 1975, § 1-1-1(8), for the proposition that only tangible personal property is subject to conversion. Code 1975, § 6-5-260, states: "The owner of personalty is entitled to possession thereof. Any unlawful deprivation of or interference with such possession is a tort for which an action lies." Section 6-5-260 makes no distinction between tangible and intangible personal property. There is case authority to the effect that intangible personal property can be the subject of *850 larceny. Latham v. State, 56 Ala.App. 234, 320 So.2d 747 (1975); Hancock v. Decker, 379 F.2d 552 (5th Cir. 1967); Annot., 18 A.L.R.3rd 1121 (1968). The appellant points out that this Court, in the case of State v. Central Computer Services, Inc., 349 So.2d 1160 (Ala. 1977), held that computer "software" was not tangible personal property for purposes of the state use tax. That case is distinguishable in that the statute involved applied to tangible personal property. We are not so limited here.
There was sufficient evidence from which the jury could have concluded that the actual tapes were converted and then copied and returned. But, if the jury based its decision on the conclusion that only the programs were taken, we could not say they were in error. In appropriate circumstances, intangible personal property can be converted, as would appear to be the case here. Alabama's Criminal Code, § 13A-8-1(10), defines "property" as "[a]ny money, [or] tangible or intangible personal property...." It would be inconsistent to say that intangible personal property can be subject to theft and yet not be subject to conversion.
The appellants have raised the point that computer programs are not subject to copyrights or patents. Assuming this to be the case, we nevertheless believe there are other property interests to be protected.
"Improvements in software are necessary to the rapid growth of computer technology; effective protection for those improvements is, by the same token, also necessary. Programs are expensive to develop. Programmers are scarce, and thus relatively well-paid, and the painstaking process of formulation, coding and testing a new program requires much valuable time. Without revenues on the use of its product by others, a company may be reluctant to invest the necessary time and money. Until now any program not of sufficient use to the developer himself to warrant the investment simply was not developed. For without revenues on the use of its product by others, a company would understandably be reluctant to invest the necessary time and money. At present, however, there is a rapidly growing interest in proprietary programs, i.e., "packages" developed primarily for sale. Use of program packages will enable the development of programs of a quality significantly higher than those developed and proliferated under the current system in which, by and large, each must develop every program he uses. The obvious result is duplication and wasted effort. The one essential ingredient of the package concept is a means of protecting the program, for without protection, it ceases to be a commodity. The wise man will not buy the cow when he can get the milk for nothing. The consequence for the software industry will be more expensive (in terms of development costs) but inferior programs."
Bender, Trade Secret Protection of Software, 38 Geo.Wash.L.Rev. 909 (1970).
We are of the opinion that the court did not err in allowing the conversion claim to go to the jury.
As for the claim by the appellants that the damages awarded by the jury were excessive, there was ample testimony to support the amount awarded. Richardson testified that the value of the programs was $99,000 and Mr. Greer testified the programs cost him $120,000 to develop. This evidence was sufficient to justify the jury's award of damages.
The final error asserted concerns the verdicts. Appellants Coffey and Sawyer argue that the verdicts make them liable twice for the same wrong. We do not perceive the verdict that way and neither does the other appellant, National Surety. National Surety submits in brief that it "was never contemplated that National Surety Corporation could collect from Coffey and Sawyer the amount of the third party judgment until they had paid out that amount of money in satisfaction of the judgment rendered against them," in favor of Applied Systems. Applied Systems has, in effect, a $25,000 judgment against the appellants. Only to the extent that it is called on to satisfy the judgment in favor *851 of Applied Systems, can National Surety proceed on its judgment against Coffey and Sawyer.
Accordingly, the judgment is affirmed.
AFFIRMED.
TORBERT, C. J., and FAULKNER, EMBRY and ADAMS, JJ., concur.

ON APPLICATION FOR REHEARING
ALMON, Justice.
The parties are still in disagreement over the effect of three verdicts rendered by the jury. Coffey and Sawyer, as well as National Surety, have filed applications for rehearing, saying that this Court's resolution of the verdict issue is correct and it is clear from the opinion that Applied Systems is entitled to collect only one award of $25,000. Conversely, Applied Systems argues that it is entitled to collect a total of $50,000.
Ordinarily, we would not further address this issue, because the parties seeking rehearing are contending the original opinion is correct and unambiguous. To prevent further litigation, however, we have again reviewed the record and remain of the opinion that Applied Systems is only entitled to collect $25,000.
The first verdict fixed the total amount of damages for the only wrong committed in this case, i.e., conversion of property. The other two verdicts adjust the rights of the parties regarding the surety bond covering the employees in question and National Surety's right of subrogation under the contract.
In reviewing the original opinion we noted an error in our recitation of the third verdict. Data Plus was erroneously mentioned in that verdict; that reference is hereby deleted.
OPINION EXTENDED AND CORRECTED; APPLICATION OVERRULED.
TORBERT, C. J. and FAULKNER, EMBRY and ADAMS, JJ., concur.