**PRECISION AIR PARTS, INC.,**
Plaintiff-Appellee,

v.

**AVCO CORPORATION,**
Defendant-Appellant.

No. 83–7435.

United States Court of Appeals,
Eleventh Circuit.

July 24, 1984.

Rehearing and Rehearing En Banc
Denied Sept. 4, 1984.

Alvin D. Shapiro, Kansas City, Mo., for defendant-appellant.

David B. Byrne, Jr., Montgomery, Ala., John E. Enslen, Wetumpka, Ala., for plaintiff-appellee.

Before TJOFLAT and HATCHETT, Circuit Judges, and GARZA *, Senior Circuit Judge.

GARZA, Senior Circuit Judge:

## I.

### FACTS & PROCEEDINGS BELOW

Defendant-appellant Avco Corporation ("Avco") and plaintiff-appellee Precision Air Parts, Inc. ("Precision") manufacture and sell replacement parts for gasoline airplane engines. Avco brought a diversity action charging Precision with trade secret misappropriation and copyright infringement with respect to certain replacement parts (Case No. 1).

The district court granted summary judgment for Precision, holding that any claims arising before January 1, 1978, were barred by the Alabama one-year statute of limitations and any claims accruing after January 7, 1978, were preempted by the provisions of the newly enacted Copyright Revision Act, 17 U.S.C. § 301(b)(2).

Avco appealed the summary judgment ruling to the Eleventh Circuit. We upheld the grant of summary judgment on the grounds of the statute of limitations alone. *Avco Corp. v. Precision Air Parts, Inc.*, 676 F.2d 494, 498 (11th Cir.1982).

---

* Honorable Reynaldo G. Garza, U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

On July 12, 1982, the Alabama Supreme Court ruled that an intangible such as a computer program could be the subject of conversion suits under Alabama law. *National Surety Corp. v. Applied Systems, Inc.*, 418 So.2d 847 (Ala.1982).

Arguing (1) that our earlier opinion was limited to only six replacement parts and (2) that Alabama law had changed, appellant brought a suit against Precision on August 5, 1982, in an Alabama State court. (Case No. 2).

On September 3, 1982, Precision filed this suit in federal district court alleging that the state court suit constituted an abuse of process (Case No. 3). Precision also asked the court to protect its previous judgment affirmed by the Eleventh Circuit.

On June 24, 1983, the trial court granted appellee's motions for summary judgment on 44 counts and overruled it as to 16 counts. The district court reasoned that summary judgment was proper on the basis of res judicata and collateral estoppel because the alleged misappropriation of the 44 parts was actually litigated in the prior suit. In addition, the court held that its order involved a controlling question of law involving differing interpretations and thus certified it for an interlocutory appeal to the Eleventh Circuit.

Appellant's appeal to this court was granted on August 2, 1983.

## II.

### ISSUES

■ This case involves the application of the doctrines of res judicata and collateral estoppel. Although in a broad, general sense the term "res judicata" encompasses the concept of collateral estoppel, strictly speaking they do have distinct meanings. In its narrower sense res judicata bars a second suit involving the same parties and same cause of action on all matters that were part of the first suit and all issues that could have been litigated. *Johnson v. United States*, 576 F.2d 606, 611 (5th Cir. 1978). The doctrine of collateral estoppel precludes relitigation only of issues that were actually litigated in the initial suit, whether or not the second suit is based on the same cause of action. *Id.*

In this case the trial court granted summary judgment for appellee on 44 parts that it found to have been actually litigated as part of Case No. 1. Consequently, we first examine the issue of defensive collateral estoppel,[1] which defendants use to prevent a plaintiff from relitigating an issue that he has already lost in a previous case. *Deweese v. Town of Palm Beach*, 688 F.2d 731, 733 (11th Cir.1982). We have recognized that three prerequisites must be met before collateral estoppel is applied:

(1) that the issue at stake be identical to the one involved in the prior litigation; (2) that the issue have been actually litigated in the prior litigation; and (3) that the determination of the issue in the prior litigation have been a critical and necessary part of the judgment in that earlier action.

*Deweese*, 688 F.2d at 733 (quoting *Stovall v. Price Waterhouse Co.*, 652 F.2d 537, 540 (5th Cir.1981)).

Appellant's argument on this issue is that application of collateral estoppel is inappropriate because this court's decision in Case No. 1 was limited to the six replacement parts alone, and the 44 parts on which it brought suit in Case No. 2 are consequently not part of the cause of action in Case No. 1. Appellant notes that after discussing when Avco's cause of action accrued, this court mentioned only six parts. Appellant also contends that nothing in our opinion indicates that the cause of action in Case No. 1 included anything

---

1. Since we hold that the 44 parts were actually litigated in Case No. 1, we need not reach the res judicata issue of whether or not these parts could have been litigated. We will refer to "res judicata," however, in its broader sense throughout the opinion.

Although appellee is styled as a plaintiff because it brought this action to protect its earlier judgment, it is in essence a defendant making use of defensive collateral estoppel.

more than the six parts to which we specifically referred.

What parts were actually litigated in Case No. 1 is a factual question subject to the clearly erroneous standard. *See Rufenacht v. Iowa Beef Processors*, 656 F.2d 198, 204 (5th Cir.1981). We agree with the trial court that the 44 parts in Case No. 2 are part of the same cause of action as in Case No. 1.

Although it is true that our opinion in case No. 1 specifically referred to only six parts, in determining the validity of appellant's argument one should examine the record as a whole, not simply our written opinion. An appellate opinion need not restate every fact contained in a lengthy record. Reference to every part was unnecessary to our first opinion. We mentioned the circumstances surrounding six parts—and not even all of them by number—to demonstrate that Avco's complaint was barred by the statute of limitations. Our decision was based on the record in the district court. The depositions there, and Avco's responses to interrogatories, reveal that the 44 parts were included in Case No. 1.

Appellant also advances various arguments that it is not splitting its cause of action. For example, it opines that the evidence it presently offers regarding the 44 parts in question is not the same as was used for whatever is deemed to have been the cause of action in the first suit. Although the evidence which it now presents may or may not be different, it does not make the trial court's ruling that the 44 parts were included in Case No. 1 clearly erroneous.

In the alternative, appellant posits that res judicata is inapplicable where there has been an intervening change of law between the first and second suit. Next, it maintains that a recent Alabama Supreme Court case has announced a change applicable to its case. In *National Surety Corp. v. Applied Systems, Inc.*, 418 So.2d 847 (Ala. 1982), the court ruled that "[a] computer program, in appropriate circumstances, can be the subject of conversion...." *Id.* at 849. Appellant contends that since a computer program is an intangible, that decision means that conversion of all intangibles are governed by the six year statute of limitations, and that the time bar ruling in Case No. 1 is no longer applicable.

We disagree with appellant on both points. First, *National Surety* did not establish a strict rule that all conversion actions involving intangibles are to be governed by the six year statute of limitations. The case merely held that "[a] computer program, *in appropriate circumstances* can be the subject of conversions." 418 So.2d at 849 (emphasis added). Indeed, since *National Surety* the Alabama Supreme Court has recognized the continuing applicability of the one year statute of limitations to conversion of intangibles. In *Drill Parts & Service Co., Inc. v. Joy Mfg.*, 439 So.2d 43 (Ala.1983), the court upheld a trial court's injunction against a defendant's use of trade secrets (engineering designs) allegedly misappropriated. In reaching its decision the court addressed a statute of limitations issue and recognized that the one year provision was applicable to the case.[2]

Second, even assuming that the six year statute of limitations is applicable to conversion of engine part designs, the alleged change in the law would be irrelevant because it would have occurred after a final judgment had been rendered. Appellant argues that when a change in law

---

**2.** Drill Parts next contends that Joy's claim was barred by the statute of limitations; that the applicable statute of limitations is *one year* in an action based on the trade secrets doctrine and that the evidence shows Joy knew of Drill Parts' use of the drawings for a period of at least five years.... [W]e conclude that the trial judge could have found that Joy had no knowledge prior to one year before the suit was filed that Drill Parts was using its drawings. Having decided that the trial court could have found that Joy had no knowledge of Drill Parts' possession and improper use prior to *one year* before suit was brought, we need not address whether the trade secrets doctrine would come under the continuing torts doctrine as advocated by Joy. 439 So.2d at 51 (emphasis added).

occurs between the time of two suits, res judicata and collateral estoppel cannot be used to bar the second suit. Appellant cites many federal cases for this proposition and appellee mistakenly assumes that Alabama law controls this issue. State law governs whether or not a state court judgment bars a subsequent federal diversity action. *Commercial Box & Lumber Co., Inc. v. Uniroyal, Inc.,* 623 F.2d 371, 373 (5th Cir.1980); *Cleckner v. Republic Van & Storage Co., Inc.,* 556 F.2d 766, 768 (5th Cir.1977). When a federal court sitting in diversity examines the collateral estoppel or res judicata effect of a prior federal judgment, based either on diversity or a federal question, it must apply federal common law. *Rufenacht v. Iowa Beef Processors, Inc.,* 656 F.2d 198, 202 (5th Cir. 1981), *cert. denied,* 455 U.S. 921, 102 S.Ct. 1279, 71 L.Ed.2d 462 (1982); *Stovall v. Price Waterhouse Co.,* 652 F.2d 537, 540 (5th Cir.1981); *Commercial Box & Lumber Co., Inc. v. Uniroyal, Inc.,* 623 F.2d 371, 373 (5th Cir.1980); *Southern Pacific Transportation Co. v. Smith Material,* 616 F.2d 111, 115 (5th Cir.1980); *Johnson v. United States,* 576 F.2d 606, 611 (5th Cir.1978), *cert. denied,* 451 U.S. 1018, 101 S.Ct. 3007, 69 L.Ed.2d 389 (1981); *Willis v. Fournier,* 418 F.Supp. 265 (M.D.Ga.), *aff'd without opinion,* 537 F.2d 1142 (5th Cir. 1976). *See also Aerojet-General Corp. v. Askew,* 511 F.2d 710 (5th Cir.), *cert. denied,* 423 U.S. 908, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975).

■ The general rule in this circuit,[3] and throughout the nation, is that changes in the law after a final judgment do not prevent the application of res judicata and collateral estoppel, even though the

grounds on which the decision was based are subsequently overruled. *Clouatre v. Houston Fire & Casualty Co.,* 229 F.2d 596, 598 n. 4 (5th Cir.1956). *See* 18 Wright, Miller & Cooper, *Federal Practice & Procedure:* Jurisdiction § 4415, at 130 (1981); *e.g., Nilsen v. City of Moss Point,* 701 F.2d 556, 564 (5th Cir.1983) (*en banc*); *Hardison v. Alexander,* 655 F.2d 1281, 1288 (D.C.Cir.1981); *Harrington v. Vandalia-Butler Bd. of Education,* 649 F.2d 434, 438 (6th Cir.1981); *Stewart Securities Corp. v. Guaranty Trust Co.,* 597 F.2d 240, 242 (10th Cir.1979); *Barzin v. Selective Service Local Bd. No. 14,* 446 F.2d 1382, 1383 (3rd Cir.1971); *Ripperger v. A.C. Allyn & Co.,* 113 F.2d 332, 333 (2nd Cir.), *cert. denied,* 311 U.S. 695, 61 S.Ct. 136, 85 L.Ed. 450 (1940). As the Supreme Court has stated:

> [n]or are the res judicata consequences of a final unappealed judgment altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case.... '[t]he indulgence of a contrary view would result in creating elements of uncertainty and confusion and in undermining the conclusive character of judgments, consequences which it was the very purpose of the doctrine of res judicata to avert.'

*Federated Department Stores, Inc. v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 2427, 69 L.Ed.2d 103 (1981) (quoting *Reed v. Allen,* 286 U.S. 191, 201, 52 S.Ct. 532, 534, 76 L.Ed. 1054 (1932)) (second bracket in original). Indeed, res judicata serves a very important role in the judicial process.[4]

■ Appellant cites outdated Supreme Court cases and two of our recent opinions for the proposition that where new court

---

**3.** We note in passing that appellant would fare no better if Alabama law was applicable. Indeed, Alabama strictly applies res judicata even in the face of subsequent legal changes that are substantial. *E.g., Louisville & Nashville R.R. v. Atkins,* 435 So.2d 1275, 1279 (Ala.1983); *Trimble v. Bramco Products, Inc.,* 351 So.2d 1357, 1362 (Ala.1977).

**4.** By declaring an end to litigation, the doctrine adds certainty and stability to social institutions. This certainty in turn generates

public respect for the courts. By preventing relitigation of issues, res judicata conserves judicial time and resources. It also supports several private interests, including avoidance of substantial litigation expenses, protection from harassment or coercion by lawsuit, and avoidance of conflicting rights and duties from inconsistent judgments.

*Southwest Airlines Co. v. Texas International Airlines,* 546 F.2d 84, 94 (5th Cir.), *cert. denied,* 434 U.S. 832, 98 S.Ct. 117, 54 L.Ed.2d 93 (1977).

decisions change the law, the res judicata effect of the first litigation is removed. Appellant is correct that in the past we have held that an intervening change in the law nullified the res judicata effect of a prior decision. *E.g., Jackson v. DeSoto Parish School Bd.*, 585 F.2d 726, 729 (5th Cir.1978); *Moch v. East Baton Rouge Parish School Bd.*, 548 F.2d 594, 598 (5th Cir.), *cert. denied*, 434 U.S. 859, 98 S.Ct. 183, 54 L.Ed.2d 132 (1977); *Christian v. Jemison*, 303 F.2d 52, 54 (5th Cir.1962). These cases, however, are readily distinguishable from the case at bar because they involved momentus changes in important, fundamental constitutional rights. No such significant changes or fundamental rights are involved in this case. In *Jemison* we did not apply res judicata to a state court judgment because three months after the prior judgment was issued the Supreme Court, in *Brown v. Bd. of Education*, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954), overruled the separate but equal doctrine. *Jackson* and *Moch* both concerned a substantial change in constitutional rights involving re-apportionment plans. As we stated in *Moch:*

> This court is well aware of the value that the bar and estoppel doctrines serve in achieving a finality to litigation and in preventing harassment of a party and a waste of the court's resources through multiplicitous law suits. We are unwilling to hold, however, that they constitute an absolute from which we must never stray, even when a mechanical application would result in manifest injustice. Rather, we believe that the *occasional adoption of an exception* to the finality rule when public policy so demands does not undermine its general effectiveness.

548 F.2d at 598 (emphasis added). Our sister circuit has recently also noted that "[t]he changed circumstances must be 'significant' and must create 'new legal conditions.'" *Hernandez v. City of Lafayette*, 699 F.2d 734, 737 (5th Cir.1983) (quoting *Jackson*, 585 F.2d at 729). The case at bar does not warrant an exception to the general rule.

Finally, Avco is barred from utilizing the change in the statute of limitations because it failed to include a count for conversion of intangible property in its complaint in Case No. 1.

Appellant's next contention is that it did not have a full and fair opportunity to litigate in case No. 1. Appellant argues that before pretrial discovery could be completed the district court incorrectly granted summary judgment on the basis of no facts relating to the substance of the complaint itself.

■ It is well settled that res judicata cannot be applied against a party who did not have a full and fair opportunity to litigate an issue in a previous suit. The Supreme Court has noted that, "the Court has repeatedly recognized ... that the concept of collateral estoppel cannot apply when the party against whom the earlier decision is asserted did not have a full and fair opportunity to litigate [an] issue in the earlier case." *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980). *Accord Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 480, 102 S.Ct. 1883, 1896, 72 L.Ed.2d 262 (1982); *Montana v. U.S.*, 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979). We find appellant's contentions on this issue without merit. In Case No. 1 appellee put the statute of limitations in issue and Avco had a full opportunity to litigate this issue. On April 17, 1978, Precision received several parts manufacturer approvals (PMAs) from the Federal Aviation Administration (FAA), which entitled Precision to sell the parts. Through interrogatories in the record, the court had evidence of when Precision filed its PMAs. As we noted in Case No. 1, an examination of the record reveals that Avco's action was time barred unless Alabama courts would recognize a continuing torts theory in this case. 676 F.2d at 497. Moreover, we held that "Avco had ample time and opportunity to present any material relevant to the summary judgment motion but failed to do so." 676 F.2d at 495.

Nothing in the record nor in appellant's brief indicates that the district court in

Case No. 3 erred in rejecting Avco's argument that it did not receive a fair trial in Case No. 1. Avco complains that the trial court in Case No. 3 aborted discovery prematurely. We disagree. The res judicata issue facing the court was simple and Avco should not be allowed to file the same lawsuit against Precision after Avco has received an adverse decision following a full and fair opportunity to litigate its claim in court.

Appellant's final argument is that the district court's grant of summary judgment before completion of pretrial discovery was erroneous because material fact issues existed and careful inquiry into what was litigated in Case No. 1 was thus precluded. We disagree. Including subparts, Precision answered more than 1,000 interrogatories in Case No. 3 before summary judgment was granted. No amount of additional discovery can alter the record in Case No. 1. Further testimony of witnesses or answers to interrogatories will not create genuine issues of material fact as to whether or not Avco had a full and fair opportunity to litigate as to the 44 parts in Case No. 1.

Avco also points out that Precision had neither obtained the design of, nor filed PMAs for, 18 of the 44 parts in issue when Avco filed suit in Case No. 1 in June of 1979. Avco's tack skirts the issue at hand—what parts the record shows to have been involved in Case No. 1, and whether or not the district court's decision on this matter was clearly erroneous. The record reveals that all 44 parts were the subject of Case No. 1, even if at the time the suit was filed Precision had not obtained the design of 18 of the 44 parts or filed a PMA on them. Thus appellant's action is now barred by res judicata, even if Avco could not have prevailed on 18 of the parts because it filed prematurely as to them.

Having considered all of appellant's arguments and finding them without merit we affirm the district court's grant of summary judgment for Precision as to the 44 parts in this case.

AFFIRMED.