CAPELETTI BROTHERS, INC., Weekley Asphalt Paving Inc., Westwind Contracting, Inc., and Hardrives Company, Plaintiffs,

v.

METROPOLITAN DADE COUNTY, Joaquin Avino, Defendants.

No. 90–0678–CIV.

United States District Court, S.D. Florida.

April 13, 1990.

Herbert P. Schlanger and Deborah Gibson, Atlanta, Ga., for plaintiffs.

R.A. Cuevas, Jr., Asst. Dade County Atty., Miami, Fla., for defendant, Dade County.

Philip E. Beck, Smith, Currie & Hancock, Atlanta, Ga., for defendant, Lowell Dunn.

## AMENDED MEMORANDUM OPINION AND ORDER

SCOTT, District Judge.

Once again, an action has been brought challenging the constitutionality of a Metropolitan Dade County ordinance and resolution granting preferential treatment to blacks in its contract bidding process.[1] The ordinance has a provision that allows the county to set aside certain designated county contracts exclusively among Black contractors. It also contains a goals provision by which the county can require that a certain percentage of a contract's value be subcontracted to Black contractors.

Plaintiffs are White construction contractors and subcontractors who allege that they have been adversely affected by Metropolitan Dade County's race-conscious ordinance.[2] The defendants are Metropolitan Dade County ("Dade County" or "county"), the county manager, and The Lowell Dunn Company. Plaintiffs request (1) a permanent injunction against enforcement of the ordinance, and (2) a declaration that the ordinance is unconstitutional.

Upon the filing of the complaint, the Court held a Status Conference. During the Status Conference, the Court established certain schedules and accelerated the date upon which the final hearing on this cause was to commence. The hearing was held on April 3, 1990 at which evidence was adduced and legal argument heard from all parties. At the conclusion of the hearing,

---

1. In 1982, several non-profit corporations and trade associations brought suit challenging the same race-conscious affirmative action plan for county contracts that is at issue here. *See South Florida Chapter of the Associated General Contractors of America, Inc. v. Metropolitan Dade County, Florida,* 552 F.Supp. 909 (S.D.Fla.1982), *aff'd in part, rev'd in part,* 723 F.2d 846 (11th Cir.1984), *cert. denied,* 469 U.S. 871, 105 S.Ct. 220, 83 L.Ed.2d 150 (1984).

2. In their complaint, Plaintiffs also challenge Congressionally-mandated requirements that Dade County utilize subcontracting goals for disadvantaged business enterprises in construction contracts involving federal funding. On March 29, 1990, the Court issued an order granting the county's motion for a separate hearing on those claims.

the Court took the matter under advisement and now issues its memorandum opinion.

## I. DISCUSSION

### A. *Res Judicata*

■ The threshold issue in this case is whether Plaintiffs are precluded by res judicata principles from challenging Dade County's race-conscious affirmative action plan. Defendants maintain that the final judgment rendered in *South Florida Chapter of Associated General Contractors of America, Inc. v. Metropolitan Dade County, Florida*, 552 F.Supp. 909 (S.D.Fla.1982); *aff'd in part, rev'd in part,* 723 F.2d 846 (11th Cir.1984), *cert. denied,* 469 U.S. 871, 105 S.Ct. 220, 83 L.Ed.2d 150 (1984) bars Plaintiffs from relitigating their claims attacking the county's ordinance. Plaintiffs argue that res judicata does not apply because the applicable law has changed since the *Associated General Contractors* litigation. They contend that if the present constitutional standards had been employed by the district court in the 1982 action, the district court would have declared the county's race-conscious ordinance unconstitutional and enjoined its enforcement. Defendants counter this argument by asserting that a postjudgment change of law does not alter the res judicata effect of a final judgment and point to *Federated Department Stores v. Moitie*, 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981) for support.

In general, "changes in the law after a final judgment do not prevent the application of res judicata and collateral estoppel, even though the grounds on which the decision was based are subsequently overruled." *Precision Air Parts, Inc. v. Avco Corp.*, 736 F.2d 1499, 1503 (11th Cir.1984), *cert. denied,* 469 U.S. 1191, 105 S.Ct. 966, 83 L.Ed.2d 970 (1985). This circuit, however, recognizes an exception to the general rule in cases involving constitutional law. "Faced with changing law, courts hearing questions of constitutional right cannot be limited by res judicata. If they were, the Constitution would be applied differently in different locations." *Parnell v. Rapides Parish School Bd.*, 563 F.2d 180, 185 (5th Cir.1977), *cert. denied,* 438 U.S. 915, 98 S.Ct. 3144, 57 L.Ed.2d 1160 (1978). *See also Jackson v. De Soto Parish School Bd.*, 585 F.2d 726, 729 (5th Cir.1978); *Moch v. East Baton Rouge Parish School Bd.*, 548 F.2d 594, 598 (5th Cir.), *cert. denied,* 434 U.S. 859, 98 S.Ct. 183, 54 L.Ed.2d 132 (1977); *Christian v. Jemison*, 303 F.2d 52, 54 (5th Cir.1962).

Nothing in *Moitie* defeats this exception. *See Precision Air Parts*, 736 F.2d at 1504 (post-*Moitie* decision recognizing the continued viability of the exception to application of res judicata principles where a case involves significant changes in important, fundamental constitutional rights). Therefore, if the relevant law has undergone significant changes since the *Associated General Contractors* litigation, Plaintiffs will be able to escape the application of res judicata.

Parenthetically, the Court is constrained to observe that neither party disclosed to the Court the controlling authority on this issue. We are at a loss to understand this failure. Any counsel involved in this litigation and researching this issue could have, and indeed, should have, recognized the importance, if not the obligation, of disclosing these pertinent legal authorities. The failure to present the legal authorities properly applicable to this case is inexcusable. The Court trusts that the parties will not place the Court in such a position again.

In support of their argument that the applicable law has changed since the *Associated General Contractors* litigation, Plaintiffs principally rely on the United States Supreme Court opinion in *City of Richmond v. J.A. Croson Company*, 488 U.S. 469, 109 S.Ct. 706, 102 L.Ed.2d 854 (1989). In *Croson*, the Supreme Court found that the City of Richmond had violated the equal protection clause by requiring prime contractors for the city to subcontract at least 30% of the dollar amount of their construction contracts to one or more minority business enterprises. In Part IIIA of Justice O'Connor's opinion, a plurality of the Court ruled that all racial

classifications, including those adopted for remedial purposes, are subject to strict scrutiny review. *Croson,* 109 S.Ct. at 721; *id.,* 109 S.Ct. at 734–35 (Scalia, J., concurring).

In Part IIIB, a majority of the Court undertook a searching review of the predicate facts relied on by the district court. *Croson,* 109 S.Ct. at 723–28. The five findings relied upon by the district court were as follows: "(1) the ordinance declares itself to be remedial; (2) several proponents of the measure stated their views that there had been past discrimination in the construction industry; (3) minority businesses received .67% of prime contracts from the city while minorities constituted 50% of the city's population; (4) there were very few minority contractors in local and state contractors' associations; and (5) in 1977 Congress made a determination that the effects of past discrimination had stifled minority participation in the construction industry generally." *Croson,* 109 S.Ct. at 723. The majority rejected each of these factual findings and found that they did not provide a valid basis for a race-based plan.

In particular, the Court ruled that mere assertions of a "benign" or legitimate purpose is entitled to little or no weight. With respect to the statements regarding the views of proponents of the measure, the Court found them to be of "little probative value in establishing identified discrimination in the Richmond construction industry." *Croson,* 109 S.Ct. at 724. The Court also ruled that a comparison between the number of prime contracts awarded to minority firms and the minority population of the city (as opposed to the number of qualified minority firms) is inappropriate. *Croson,* 109 S.Ct. at 725–26. As for the finding that there were few minority contractors in local and state contractors' associations, the Court stated that for this factor to be relevant it would have to be linked to the number of local minority business enterprises eligible for membership. *Croson,* 109 S.Ct. at 726. With respect to the final factor, the majority stated that it was of extremely limited probative value. *Id.*

In Part IV, a majority of the Court concluded that the city was required to show that its plan was "narrowly tailored to remedy prior discrimination" and found that it had not made that showing. *Croson,* 109 S.Ct. at 728. The Richmond plan failed the test of narrowing tailoring because there had been no "consideration of the use of race-neutral means to increase minority business participation in city contracting," *Croson,* 109 S.Ct. at 727, nor did the plan provide for an "inquiry into whether or not the particular MBE seeking a racial preference ha[d] suffered from the effects of past discrimination...." *Croson,* 109 S.Ct. at 729–30. In Part V, Justice O'Connor, joined by Chief Justice Rehnquist and Justices White, Kennedy, and Scalia, suggested what types of state remedial action might be found to be constitutional.

Upon its review of *Croson,* the Court finds merit in Plaintiffs' contention that the relevant constitutional law has undergone significant changes since the adjudication of the first suit. *Croson* clearly modifies the analysis lower courts must apply when reviewing the constitutionality of affirmative action plans. The Court notes that Defendants impliedly concede this point for they never claimed that the law was not changed by *Croson.* Indeed, it would be sheer sophistry to make such a claim. Accordingly, the Court concludes that res judicata does not preclude the present action.

### B. *Necessity for Supplemental Hearing*

■ Now that the Court has determined that the principles of res judicata do not bar Plaintiffs' claims, the Court must analyze Dade County's race-conscious affirmative action plan under the constitutional framework set forth in *Croson.* However, it is the Court's considered opinion that a supplemental hearing is warranted before a final decision is rendered on the validity of Dade County's affirmative action plan.

*Croson* raises considerable questions as to the sufficiency of the evidence upon which the district judge relied in upholding the validity of Dade County's program in

the prior litigation.[3] During the April 3, 1990 hearing, defense counsel failed to direct the Court's attention to the evidence upon which this Court could find identified discrimination under present constitutional standards. Instead, the assistant county attorney merely requested the Court to take judicial notice of all of the evidence introduced in the prior litigation. Our review of this evidence over the past week has proved to be a herculean task, given the time constraints. This evidence is comprised of hundreds of pages of reports, deposition and court transcripts. In light of the parties' intimate familiarity with all of the underlying evidence, it makes absolutely no sense for this Court to spend its limited resources and valuable judicial time poring over the record in an effort to extricate the evidence upon which the county relies to demonstrate the program's validity under *Croson* when counsel can easily direct the Court to the pertinent evidence.[4]

Considerable interest and controversy surround the issues raised by this litigation. The validity of Dade County's race-conscious affirmative action is of paramount importance to the community and to this Court. It is not to be taken lightly. The parties deserve every opportunity to make their record, and, at this point, the Court is not satisfied that this has occurred. In light of the importance of the issue, the Court deserves all the legal and evidentiary guidance it can obtain. Therefore, the Court will schedule a supplemental evidentiary hearing on the issue of the validity of Dade County's race-conscious affirmative action plan under present constitutional standards.[5]

During this hearing, the parties will have the opportunity to present whatever additional testimonial or documentary evidence they consider necessary. The Court fully expects the parties to diligently direct the Court to the specific, and not just the general, evidence in the record that supports their respective positions.

On the other hand, if a good faith assessment of the evidence reveals that there is no evidence to uphold the county's remedial legislation, the Court strongly suggests that the county consider stipulating to the entry of a permanent injunction and begin devoting its resources and the taxpayers' dollars to implementing a new program that would conform to the present constitutional standards rather than expending valuable resources opposing Plaintiffs' efforts to suspend the local program. *See Cone Corp. v. Hillsborough County,* 723 F.Supp. 669, 678–679 (M.D.Fla.1989) (questioning the good faith of defendants in opposing the entry of a preliminary injunction where the record demonstrated the unconstitutionality of the program under *Croson* and noting that the Court's time and the parties' time, fees and expenses would have been better served by suspending the challenged program and working on a new one).

### C. Dismissal of Lowell Dunn Company

During the April 3, 1990 hearing, Defendant Lowell Dunn Company ("Lowell

---

3. For example, each of the three factors used as support for the district court's finding of identified discrimination are now undermined by *City of Richmond v. J.A. Croson Company,* 488 U.S. 469, 109 S.Ct. 706, 102 L.Ed.2d 854 (1989). *See* Finding Number 41, *Associated General Contractors,* 552 F.Supp. at 926, *Croson,* 109 S.Ct. at 725–26. Unless there is other evidence upon which this Court could find identified discrimination, the Court would be constrained to declare the county's race-conscious program unconstitutional.

4. The Court notes that the assistant county attorney representing Dade County in this lawsuit is the same one who represented the county in the prior litigation.

5. Indeed, this is the wisest course to follow in light of the present record. *See Northeastern*

*Florida Chapter of the Association of General Contractors of America v. City of Jacksonville, Florida,* 896 F.2d 1283, 1286 (11th Cir.1990) ("Nevertheless, keeping in mind the deference due to laws enacted by democratically elected local governments, we believe that the district court should have developed a more complete record on which to evaluate the circumstances in which the Jacksonville ordinance was passed and the consequences of immediate judicial action in advance of a full and fair trial."). *Northeastern Florida Chapter* is pertinent and controlling authority bearing directly on the issues raised in this litigation. Once again, however, the parties failed to inform the Court of this important decision. This lack of diligence is disturbing.

Dunn") moved for entry of an order dismissing all claims asserted against it. The Court notes that Plaintiff Westwind Contracting, Inc. ("Westwind") has withdrawn its claim seeking to enjoin the County from awarding the contract for project number 650786 to any entity except Westwind. Moreover, the county has already accepted and awarded the bid to Lowell Dunn. Under Florida law, any claim for injunctive relief is therefore moot and Westwind is limited to an action at law for damages against the county. *See Schloesser v. Dill*, 383 So.2d 1129 (Fla. 3d DCA 1980); *Wood–Hopkins Contracting Co. v. Roger J. Au & Son, Inc.*, 354 So.2d 446 (Fla. 1st DCA 1978). No party has asserted a claim for damages against Lowell–Dunn. Accordingly, the Court will enter an order granting Defendant Lowell Dunn's *ore tenus* motion for dismissal of all claims asserted against it.

## II. CONCLUSION

For the reasons stated above, it is ORDERED AND ADJUDGED as follows:

1. Plaintiffs are not precluded by res judicata principles from challenging Dade County's race-conscious affirmative action plan.

2. This matter is set for a supplemental hearing on the substantive issue of the constitutional validity of Dade County's race-conscious program on Friday, May 18, 1990 at 8:00 A.M.

3. Defendant Lowell Dunn Company's *ore tenus* motion for dismissal of the claims asserted against it is GRANTED.

DONE AND ORDERED.