**In re Darwin L. WILSON, Debtor.**

**No. 8:09–bk–29815–MGW.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Feb. 24, 2011.

---

Peter W. Kelly, Florida Default Law Group, P.L., Tampa, FL, for Bank of America, N.A.

David B. McEwen, David B. McEwen, P.A., St. Petersburg, FL, for Susan K. Woodard, Trustee.

Melanie Archer Newby, Jodat Law Group P.A., Bradenton, FL, for Darwin L. Wilson.

## MEMORANDUM OPINION ON CHAPTER 7 TRUSTEE'S MOTION TO COMPEL TURNOVER AND OBJECTION TO AMENDED SCHEDULE C

MICHAEL G. WILLIAMSON, Bankruptcy Judge.

Under the Eleventh Circuit's *Doan* decision,[1] absent bad faith or prejudice to creditors, a debtor has a right to amend schedules at any time during the case. In this case, the Debtor amended his schedules to add a claim under Florida's "wildcard exemption," which allows a debtor who does not claim or receive the benefit of the Florida constitutional homestead exemption to claim an additional $4000 in personal property as exempt.[2] However, the Debtor amended his schedules only after the Court had already sustained an objection to the Debtor's original claim of exemptions, an order compelling turnover of the resulting non-exempt property had been entered, and a further motion to compel compliance with the turnover order had been filed and was pending. The Court finds that under the circumstances of this case, creditors will be prejudiced by the belated claim of exemptions. Moreover, under the doctrine of res judicata, the Debtor is precluded at this stage of the case from defeating this Court's turnover order by his claim of the wildcard exemption. The Court, therefore, granted the

---

1. *In re Doan,* 672 F.2d 831, 833 (11th Cir. 1982).

2. *See* Fla. Stat. § 222.25(4) (2009) (providing for an additional $4000 exemption in personal property "if the debtor does not claim or receive the benefits of a homestead exemption under s. 4, Art. X of the State Constitution") (sometimes referred to as the "wildcard exemption").

Trustee's Motion to Compel Turnover[3] and sustained the Trustee's Objection to the Debtor's Amended Schedule C.[4]

*Factual and Procedural Background*

The Debtor filed his chapter 7 bankruptcy petition on December 31, 2009. In his original Schedule C,[5] the Debtor claimed his home as exempt under Florida's constitutional homestead exemption.[6] He listed the value of the claimed exemption as zero, and he listed the current value of the property (without deducting the exemption) as $129,000. The Debtor also claimed an exemption in a 2003 GMC Envoy under section 222.25(1) of the Florida Statutes, which provides a debtor a $1000 automobile exemption.[7] A number of other claims to exemptions on the Debtor's original Schedule C cited section 4(a)(2) of the Florida Constitution—i.e., the $1000 personal property exemption.[8] Nowhere on the original Schedule C did the Debtor reference section 222.25(4) of the Florida Statutes, which provides for the $4000 wildcard exemption.[9] Consistent with claiming the home as exempt homestead on Schedule C, the Debtor's Statement of Intention[10] dated December 31, 2009, stated that he would retain the property (as opposed to surrendering it), reaffirm the mortgage debt, and claim the property as exempt.

On February 4, 2010, the Chapter 7 Trustee, Susan K. Woodard, filed her Objection to Debtor(s) Exemptions ("Objection to Exemptions") stating that the claimed exemption amount "exceed[ed] the allowed personal property exemption and vehicle exemption under Florida [l]aw."[11] This filing was a routine objection to the total value of the property claimed as exempt compared to the $2000 value of the exemptions identified on Schedule C.[12] It did not challenge exactly which exemptions the Debtor was entitled to claim—it only raised the issue of whether the value of the personal property exceeded the statutory exemption amount. In response, and as is this Court's normal practice, the Court entered an Order Sustaining Trustee's Objection to Property Claimed as Exempt ("Order Sustaining Objection").[13] This was a routine, form order meant to preserve the estate's rights to contest the Debtor's retention of property at the stated value compared to the total $2000 statutory value of the two exemptions claimed. It likewise did not address any issues con-

---

3. Doc. No. 28.

4. Doc. No. 35.

5. Doc. No. 1, at 12–13, *Schedule C—Property Claimed as Exempt.*

6. Fla. Const. art. X, § 4(a)(1).

7. *See* Fla. Stat. § 222.25(1) (exempting "[a] debtor's interest, not to exceed $1,000 in value, in a single motor vehicle").

8. *See* Fla. Const. art. X, § 4(a)(2) (exempting "personal property to the value of one thousand dollars").

9. *See* note 2 *supra.*

10. Doc. No. 1, at 36, *Chapter 7 Individual Debtor's Statement of Intention.*

11. Doc. No. 10.

12. The Debtor's original schedule C claimed that the total value of claimed exempt property was $35,651.53. Because this included a 401(k) retirement plan, which was exempt under section 222.21(2) and valued at $29,651.53, the net value of the Debtor's non–401(k) property claimed as exempt in the original Schedule C was $6000. The natural reading, therefore, of the Objection to Exemptions was that the $6000 claimed in exempt property exceeded the combined $2000 allowable under the $1000 personal property exemption and the $1000 automobile exemption.

13. Doc. No. 12.

cerning the Debtor's entitlement to any specific exemption or the Debtor's claimed valuation amounts.[14] The Debtor did not respond to either the Objection to Exemptions or the Order Sustaining Objection.

As is the practice in this court, the proper follow-up procedure for the Trustee if she wanted to contest either the specific valuation amounts or the Debtor's entitlement to a particular exemption was to file a motion for turnover. On June 14, 2010, the Trustee did in fact file a Motion for Turnover or for Payment for Non–Exempt Personal Property[15] ("Initial Motion for Turnover") based on an appraisal that she commissioned. The Court's reading of the Initial Motion for Turnover combined with the Objection to Exemptions is that the Trustee did not consider the Debtor eligible for the $4000 wildcard exemption. She thus moved that the Debtor be ordered to either turn over the personal property or, alternatively, to pay the Trustee $9,559.41—i.e., the amount by which the appraised value of the Debtor's claimed exempt property exceeded the $2000 in exemptions claims. The Trustee filed her Initial Motion for Turnover using the negative notice procedure allowed under the local rules.[16] The Debtor did not respond. Finding the Initial Motion for Turnover uncontested, the Court granted it in an Order dated August 16, 2010 ("Turnover Order"),[17] and ordered the Debtor to pay the $9,559.41 directly to the Trustee within fifteen days—i.e., by August 31, 2010. The Debtor did not pay the Trustee as this Court ordered.

As a result, on October 5, 2010, the Trustee filed her Motion to Compel Turnover ("Motion to Compel"),[18] seeking enforcement of the Turnover Order. In the Motion to Compel, the Trustee asks the Court to order the Debtor to physically surrender the personal property of the estate that exceeds the combined $2000 value exempted under the personal property and automobile exemptions claimed. Responding to this issue for the first time on October 21, 2010, the Debtor filed a timely Objection to Trustee's Motion to Compel Turnover of Property ("Objection to Turnover").[19] In the Objection to Turnover, the Debtor stated that he

> ... is not receiving the benefit of the homestead exemption as there is no equity and is therefore entitled to aggregate statutory amounts of $5000 for personal property and $1000 for one motor vehicle.[20]

On December 7, 2010, just two days before a scheduled hearing on the Motion to Compel, the Debtor filed an Amended Schedule C—Property Claimed as Exempt[21] ("Amended Schedule C"), which identified section 222.25(4) of the Florida Statutes as the legal authority that supports the Debtor's claimed personal property exemption. Because the Trustee had not yet had time to review the Amended

---

**14.** *Id.* ¶ 1–5 (making clear that (1) the Court was sustaining the Trustee's objection "to the extent the value of the Claimed Property exceeds the allowable objections under Florida law," (2) the Court would resolve any dispute as to the value of the Claimed Property only after the Trustee filed a motion for turnover, and (3) "[i]f either party request[ed] reconsideration of the terms of the Order, the Court [would] promptly schedule a hearing to consider the motion *de novo* ").

**15.** Doc. No. 21.

**16.** Bankr.M.D. Fla. R. 2002–4.

**17.** Doc. No. 24.

**18.** Doc. No. 28.

**19.** Doc. No. 29.

**20.** *Id.* ¶ 2.

**21.** Doc. No. 34.

Schedule C, the Court continued the December 9, 2010 hearing to January 6, 2011. In the interim, the Trustee filed an Objection to Debtor's Amended Schedule C [22] ("Objection to Amendment"), in which the Trustee claimed that the Debtor is barred from amending his Schedule C under the doctrines of res judicata, collateral estoppel, laches, and lack of good faith.[23] The Trustee also argued that the Debtor's delay in amending his schedule of claimed exemptions caused her to unnecessarily "expend[ ] considerable effort and incur[ ] additional expense in the administration of this estate." At the hearing on January 6, 2011, the Debtor argued that his original Schedule C had effectively, if not explicitly, claimed the $4000 wildcard exemption because he valued the homestead exemption at zero and the total personal property claimed as exempt equaled $6000.[24]

The Court now has before it both the Trustee's Motion to Compel and the Trustee's Objection to Amendment. The facts and procedural history described above present the Court with two issues: (1) was there ever an original claim of the wildcard exemption under section 222.25(4), and (2) if there was no such claim, can the Debtor now make such a claim of exemption, or is he precluded from doing so either as a matter of bad faith, prejudice, or under the principles of res judicata?

### Conclusions of Law

The Court has jurisdiction to determine the Motion to Compel and the Objection to Amendment pursuant to 28 U.S.C. § 1334(b) and 11 U.S.C. §§ 521, 522 and 542. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) and (E).

### A. A Debtor's Claim of Exempt Personal Property Under Florida Law

■ Florida law permits debtors to exempt up to $6000 in personal property: a $1000 exemption for personal property,[25] a $1000 exemption for the debtor's interest in a single motor vehicle,[26] and the $4000 wildcard exemption for additional personal property "if the debtor does not claim or receive the benefits of a homestead exemption under s. 4, Art. X of the State Constitution." [27]

Under Bankruptcy Code section 522(*l*), a debtor must "file a list of property that the debtor claims as exempt." On Schedule C, the debtor must specify for each property claimed: (i) a description of the property, (ii) the specific law that allows the exemption, (iii) the exemption's claimed value, and (iv) the current value of the property without deducting the exemption. In addition, section 521(a) requires a chapter 7 debtor to file a statement of intention that declares for debts that are secured by property of the estate whether the debtor will retain or surrender the property and whether the property is claimed as exempt.[28]

■ As noted above, the first question before the Court is whether there was ever an original claim of the wildcard exemption under section 222.25(4). The Court finds that the Debtor's original Schedule C does not claim the wildcard exemption. Instead, it explicitly claims Florida's constitutional exemptions under

---

**22.** Doc. No. 35.

**23.** *Id.* at ¶ 9.B.

**24.** *See* note 12 *supra*.

**25.** Fla. Const. art. X, § 4(a)(2).

**26.** Fla. Stat. § 222.25(1).

**27.** Fla. Stat. § 222.25(4).

**28.** 11 U.S.C. § 521(a)(2)(A).

Article X for both personal property [29] and the homestead exemption.[30] The plain language of section 222.25(4) precludes a debtor from simultaneously claiming both the wildcard exemption and the constitutional homestead exemption.[31] The Debtor, therefore, effectively precluded his claim of the wildcard exemption when he declared real property as exempt homestead property on his original Schedule C.

In reaching this conclusion, the Court has considered the Debtor's argument that he implicitly claimed the wildcard exemption and not the homestead exemption when he valued the homestead exemption at zero and claimed a total of $6000 in exempt personal property on Schedule C. This is a troublesome argument. If the Debtor wanted to claim the wildcard, he should not have listed the homestead on Schedule C at all, and he should not have identified it as exempt under section 4(a)(1) of Article X. The more natural reading of the Debtor's original Schedule C is that because the Debtor had no equity in the homestead property, the benefit of it to him was then currently valued at zero. The Debtor's Statement of Intention, which declares that he will retain the property and claim it as exempt, supports this reading.

Moreover, it is not uncommon for the values of property claimed on a debtor's Schedule C to add up to an amount in excess of the $1000 allowed generally for personal property or the $2000 allowed if an interest in an automobile is also claimed. The Court concludes that an implicit claim of an unidentified $4000 exemption, one that can only be divined by finding and applying the correct mathematical calculation, cannot suffice to establish a claim of the wildcard exemption under section 222.25(4). The wildcard exemption must be explicitly claimed and cannot be contradicted by other claimed exemptions. Accordingly, the Court finds that the wildcard exemption was not claimed in the Debtor's original Schedule C.

## B. *Amendments to a Debtor's Schedules and Claims of Exemption*

During the course of an individual bankruptcy case, it is not uncommon for a debtor to change his or her intention and decide to surrender homestead property for various financial and practical reasons. This is particularly true in Florida, in part because when the wildcard exemption applies,[32] it enables a debtor to retain an extra $4000 of personal property. In effect, it triples the combined $2000 exemption for a debtor with an automobile. Not surprisingly, a significant amount of caselaw has developed challenging a debtor's right to amend Schedule C and the Statement of Intention post petition. In 2008, for example, two Florida bankruptcy courts rejected a debtor's attempt to amend the original schedules as untimely filed.[33] That same year, two other courts

---

**29.** Fla. Const. art. X, § 4(a)(2).

**30.** Fla. Const. art. X, § 4(a)(1).

**31.** *See* note 2 *supra*.

**32.** Whether the Debtor in this case is eligible for the § 222.25(4) wildcard exemption need not be determined based on the Court's determination *infra* that his late-filed attempt to claim the wildcard is barred by the doctrine of res judicata.

**33.** *See In re Morales,* 381 B.R. 917, 921–23 (Bankr.S.D.Fla.2008) (finding that a debtor's untimely amendment to his statement of intentions that he would surrender the homestead property precluded him from claiming the increased personal property exemption); *In re Guididas,* 393 B.R. 251, 256 (Bankr. M.D.Fla.2008) (finding the debtor's post-discharge amendments to be untimely because the petition date is the controlling date to determine whether a debtor is entitled to the wildcard exemption under § 222.25(4)).

(including this one) allowed post-petition amendments under certain circumstances.[34] Specifically, in the 2008 case of *In re Bennett,* this Court determined that the Eleventh Circuit's ruling in the 1982 case of *In re Doan* controls a debtor's right to amend:

> [T]he Eleventh Circuit has made clear that bankruptcy courts have no discretion to deny a debtor's right to amend schedules and statements at *any* time during a case.[35] ... The *Doan* Court included one limitation on the right to amend—that an amendment might be denied if there is a showing of bad faith or prejudice to creditors.[36]

▪ That said, an unlimited number of amendments certainly cannot be allowed right up until a chapter 7 bankruptcy case is closed. An endless cycle of amendments and litigation thereon would certainly frustrate the bankruptcy system's goal to swiftly and efficiently resolve disputed claims. In this respect, the Eleventh Circuit's precedent in *Doan,* gives the Court discretion to "deny leave to amend on a showing of a debtor's bad faith or of prejudice to creditors." [37] In this case, the Trustee argues that the Debtor's belated responses sound in bad faith and laches, and that the delayed amendment has unnecessarily created additional expenses in prosecuting the Initial Motion for Turnover and Motion to Compel. These additional administrative expenses will prejudice creditors in that it will reduce any ultimate distribution to them. The Court finds that while this prejudice is not great, it does constitute some prejudice because the Trustee continued forward in prosecuting the turnover of the Debtor's non-exempt property based on the assumption that the wildcard exemption had never been claimed, either at the beginning of the case or in connection with the Trustee's Initial Motion for Turnover.

▪ Further, once a dispute concerning a debtor's claim of exemption has been resolved and reduced to a final and non-appealable order, the principle of res judicata would bar its relitigation:

> [Res judicata or] claim preclusion prevents a party from suing on a claim which has been previously litigated to a final judgment by that party or such party's privies and precludes the assertion by such parties of any legal theory, cause of action, or defense which could have been asserted in that action.[38]

This doctrine supports the long-standing policy goal of finality in judicial proceedings.[39] As the Eleventh Circuit described in 1984, "[b]y declaring an end to litigation, the doctrine adds certainty and stability to social institutions. This certainty in turn generates public respect for the courts." [40] Moreover, "[b]y preventing relitigation of issues, res judicata conserves judicial time

---

**34.** *In re Martias,* 2008 WL 906776 *2 (Bankr. S.D.Fla.2008) (finding that debtor should be permitted to amend her Schedule C because the amendment related back to the petition date); *In re Bennett,* 395 B.R. 781, 791 (Bankr.M.D.Fla.2008) (described *infra* ).

**35.** *Bennett,* 395 B.R. at 791 (emphasis in original) (citing *In re Doan,* 672 F.2d 831, 833 (11th Cir.1982) and signaling Fed. R. Bankr.P. 1009(a)).

**36.** *Id.* (citing *Doan,* 672 F.2d at 833).

**37.** *Doan,* 672 F.2d at 833.

**38.** 18 James Wm. Moore et al., *Moore's Federal Practice* § 131.10[1] at 131–15 (3d ed. 2010).

**39.** *S. Pac. R.R. Co. v. U.S.,* 168 U.S. 1, 49, 18 S.Ct. 18, 42 L.Ed. 355 (1897).

**40.** *Precision Air Parts, Inc. v. Avco Corp.,* 736 F.2d 1499, 1503 n. 4 (11th Cir.1984).

and resources."[41] The standard in this circuit is that res judicata will bar a subsequent action if

> (1) the prior decision was rendered by a court of competent jurisdiction; (2) there was a final judgment on the merits; (3) the parties were identical in both suits; and (4) the prior and present causes of action are the same.[42]

Res judicata also bars "those matters which *could have been* raised . . . [and] any defenses which *could have been asserted* in the prior litigation."[43]

■ Accordingly, the Court also finds that the Debtor's late-filed attempt to amend his claims of exempt property is now precluded under the common law doctrine of res judicata or claim preclusion. As discussed above, this doctrine mandates that claims that could or should have been asserted in an action but were not previously asserted cannot later be raised in another action. The Court specifically finds that the Trustee's June 14, 2010 Initial Motion for Turnover initiated the litigation over the Debtor's claim of exemptions.[44] To assert any additional claim of exemptions or defenses to the Trustee's allegations, the Debtor was obligated to timely respond to the Initial Motion for Turnover. The Debtor ignored this opportunity, and on August 16, 2010, the Court issued the Turnover Order, which was a final and appealable order because it resulted in turnover of estate property that the Trustee could sell for the benefit of creditors. The Debtor did not appeal the Turnover Order within fourteen days as is provided for under Federal Rule of Bankruptcy Procedure 8002, nor did he file a motion for reconsideration within fourteen days after the Order's entry as is provided for in Federal Rule of Bankruptcy Procedure 9023. The Turnover Order thus became final and non-appealable after August 30, 2010. Any belated subsequent claim of exemptions is, therefore, barred by res judicata.

## Conclusion

For the above reasons, this Court concludes that the Debtor's claim of the wildcard exemption is prejudicial to creditors and is barred by res judicata. Accordingly, the Court previously entered an Order Granting Trustee's Motion to Compel[45] and an Order Sustaining Trustee's Objection to Debtor's Amended Claim of Exemptions.[46]

---

**41.** *Id.*

**42.** *Israel Discount Bank Ltd. v. Entin,* 951 F.2d 311, 314 (11th Cir.1992).

**43.** 18 *Moore's* § 131.11[1] at 131–19 (emphasis added).

**44.** The Motion to Compel, which the Trustee filed on October 5, 2010, did not initiate the dispute over the Debtor's claim of exemptions. As noted *supra,* the Motion to Compel is more properly characterized as a motion to enforce this Court's prior Turnover Order.

**45.** Doc. No. 38.

**46.** Doc. No. 39.